HIDALGO AND CAMERON COUNTIES WATER CONTROL AND IMPROVEMENT DISTRICT NO. 9 et al., Relators,

v.

The Honorable J. H. STARLEY, Special Judge Presiding in the 93rd District Court of Hidalgo County, Texas, et al., Respondents.

No. A–9840.

Supreme Court of Texas.

Jan. 8, 1964.

Smith, McIlheran & Jenkins, Weslaco, J. D. Vollmer, Mercedes, Arthur A. Klein, Harlingen, Norton A. Colvin, San Benito, Matthews, Nowlin, Macfarlane & Barrett, San Antonio, Ewers, Toothaker, Ewers, Byfield & Abbott, McAllen, Strickland, Wilkins, Hall & Mills, Mission, for relators.

Waggoner Carr, Atty. Gen., Austin, F. R. Booth, Asst. Atty. Gen., Sawnie B. Smith, Edinburg, James W. Wilson, Austin, A. W. Walker, Jr., Dallas, Rankin, Kern, Martinez & De La Garza, McAllen, Kelley, Looney, McLean & Littleton, Edinburg, Vinson, Elkins, Weems & Searls, Victor W. Bouldin, Houston, Hill, King & McKeithan, Mission, for respondents.

STEAKLEY, Justice.

This is an original mandamus proceeding. It relates to the case of State of Texas v. Hidalgo County Water Control and Improvement District No. 18 et al., pending in the 93rd Judicial District Court of Texas. The case is cause No. B–20576 by which it will be herein identified.

Relators seek a writ of mandamus compelling Honorable J. H. Starley, The Special Judge Presiding, to proceed to trial. Judge Starley has properly declined to do so because of the question of his qualification under the prohibition of Section 11, Article V, of the Texas Constitution, Vernon's Ann.St., that "No judge shall sit in any case * * * where either of the parties may be connected with him, either by affinity or consanguinity, within such a degree as may be prescribed by law * *." The third degree is prescribed by Article 15, Revised Civil Statutes. The record before us consists of the pleadings and briefs of the parties in this proceeding and the basic pleadings of the parties in the pending

case. The facts represented by the respective parties are unchallenged.

The pending case is one of great magnitude. It was filed by the State in 1956 to obtain an adjudication of the water rights to the American share of the waters of the Rio Grande River. The fifth amended original petition of the State names approximately three thousand defendants who claim the right to use water from the Rio Grande for a variety of uses, including the irrigation of over 850,000 acres of land situated in the Counties of Starr, Hidalgo, Cameron and Willacy. Relators represent that the trial of the case will extend over a period of years, and that the costs involved in the litigation, and in the allocation and distribution of the supply of water of the Rio Grande and that stored in Falcon Reservoir, pending final judgment, will reach hundreds of thousands of dollars. Relators further represent that at least twenty-five thousand individual landowners located within the districts which are named as parties in the suit will be vitally affected by the ultimate decision in the case.

It is asserted by the Attorney General on behalf of the respondent, Texas Water Commission, the principal plaintiff in the pending suit, that the Commission has named as a party defendant every person who claims to own an interest in a water right. The relief sought is the determination of "the validity and priority in point of time of each and every right to appropriate, impound, divert and use waters of the Rio Grande claimed by defendants"; that "those defendants found without valid and subsisting water rights from the Rio Grande" be permanently enjoined "from appropriating, impounding, diverting or using waters of the Rio Grande"; and that "the Court determine the duty of water and the land to which such rights are appurtenant" as to those defendants "found by the Court to have valid and subsisting water rights from the Rio Grande for irrigation use."

This Court has heretofore considered what has been the recurring problem of the qualification of a judge to sit in the case. The problem first arose with respect to Honorable W. R. Blalock who was at the time the regularly elected Judge of the 93rd District Court in which the case is pending. Judge Blalock questioned his own qualification because of his ownership of certain property in the city of Mission and lying within one of the porciones which abut on the Rio Grande River. Judge Blalock expressed the opinion in writing before this Court that he would derive benefits from a determination that the water district from which he purchased water had a prior right to water over other water districts and users who are parties to the case; and, similarly, that he would suffer a detriment if it is determined that the water district was not entitled to priority in the use of water over other water districts in the case. Notwithstanding, this Court, speaking through Chief Justice Hickman, held that Judge Blalock was not under a legal disqualification to try the case. Hidalgo County Water Improvement District No. 2 v. Blalock, 157 Tex. 206, 301 S.W.2d 593. In so doing, this Court recognized the extraordinary problem with which it was then confronted, saying:

> "We face a condition unique in the history of our jurisprudence. Relators are entitled to have their rights litigated. It is next to impossible to find a judge residing in another section of the State who could be transferred to Hidalgo County to try this case."

Subsequently, Judge Blalock was succeeded as the regularly elected Judge of the 93rd District Court by Honorable Magus Smith. Judge Smith had been an attorney in the case prior to his elevation to the bench, and his disqualification was declared in Hidalgo County Water Control and Improvement District No. 1 v. Boysen, Tex. Civ.App., 354 S.W.2d 420, er. ref. Honorable Woodrow Laughlin, Judge of the 79th District Court, had been assigned by the Presiding Judge of the Administrative District to serve as Judge of the 93rd District Court for a certain period. The qualifica-

tion of Judge Laughlin was also brought under attack in Boysen because certain of his relatives within the prohibited degree owned property in two of the water districts which are parties to the main water suit. Judge Laughlin was held qualified. The opinion of the Court of Civil Appeals, which we approved by an unqualified refusal of the application for writ of error, enlarged upon the controlling importance of the practical doctrine of necessity to which this Court expressly adverted in Blalock. Necessarily implicit in Boysen was the awareness that the landowner relatives of Judge Laughlin, like Judge Blalock, would either receive a benefit or suffer a detriment, dependent upon the outcome of the case. But it was said:

"In applying the rule of disqualification for a relative's interest we should endeavor to follow the spirit and intent of the Constitutional rule. The rule is based upon ethical principles. Justice should not have even the appearance of extraneous influence. The line has been drawn at that point where one can determine from the facts that the relative's interest is direct and real instead of indirect and remote. Even this general rule may be limited by necessity. This is so, because the Constitution does not contemplate that judicial machinery shall stop."

The problem in the present proceeding originated in the fact that the disqualification of Judge Magus Smith necessitated the assignment by the Chief Justice of this Court, pursuant to Article 200a, Section 2a(3), Vernon's Annotated Civil Statutes, of a Special Judge to preside over the full trial of the case. Judge Starley, a resident of Pecos, Texas, and the duly elected Judge of the 143rd Judicial District, was so designated on June 15, 1962. There is no question concerning his qualification at such time. But on June 1, 1963, Judge Starley married Mariam Baker Anderson, a resident of Cameron County, and thereupon became related by affinity in the sec-

ond degree to Russell Bingley, a brother of Mrs. Starley's mother, and to Mrs. Frances Davies, a sister of Mrs. Starley's father. At the time of the marriage, Mr. Bingley was a director of the Cameron County Water Control and Improvement District No. 16 and was one of the defendants in Cause B–20576. Subsequently, Mr. Bingley resigned as director, and on October 11, 1963, was dismissed as a defendant by order of Honorable Paul A. Martineau who was sitting for Judge Starley. It is represented that Mr. Bingley owns a total of five and one-half acres of land lying in two of the water districts involved. It is further represented that Mrs. Frances Davies owns 95.42 acres of agricultural land located within Cameron County Water Control and Improvement District No. 1. Neither Mrs. Davies nor Mr. Bingley, individually, is named as a party in the suit, but the districts in which they are landowners are named as parties. It appears that the rights claimed by them as landowners are based upon the fact that their land is located within the boundary of a water district; it does not appear that they claim rights against other landowners or against any water district. Nor does it appear that the pleadings and prayers for relief of the various parties encompass the settlement of controversies which may exist between individual landowners or between individual landowners and other water districts; the suit is limited to the determination of the rights of the water districts to appropriate, impound, divert and use waters of the Rio Grande under appropriative water rights claimed by the water districts in which the properties of Mr. Bingley and Mrs. Davies are located, and by other water districts. The judgment in the case would bind the landowners only in the exercise of their rights through the district and the directors of the district are authorized to represent the landowners. Article 7880–137, V.A. C.S.; Article XVI, Section 59(a) and (b) of the Texas Constitution. It is evident, therefore, that the interests of Mr. Bingley and of Mrs. Davies are no more direct than

was that of Judge Blalock and that of the relatives of Judge Laughlin. There is only the difference that Judge Blalock was shown to own four lots and a twenty-foot strip of land; the relatives of Judge Laughlin were shown to own two city lots in one water district and 19.6 acres of land in another; whereas, here, Mr. Bingley owns five and one-half acres of land lying in two water districts, and Mrs. Davies owns 95.42 acres of land lying in one district. In the context of the problem at hand, this is a difference without substance. The purposes of the requirement of the Constitution concerning the qualification of a judge to sit in a case are equally unimpaired in each instance. There was not in Blalock or in Boysen a shadow of suggestion of extraneous influence; there is none here.

It must be recognized that the conditions of this special assignment are most severe. It is doubtful if any other presently active district judge in Texas could accept an assignment to try this case over an extended period of years. It is likewise doubtful if any retired judge is physically able or otherwise available for the assignment. The fact of the thousands of landowners similarly situated to Mr. Bingley and Mrs. Davies presents the ever-present possibility that a relationship to any judge assigned to the case may develop at any time, and thus jeopardize the orderly adjudication of the controversies. Judge Starley has been presiding over the case since June 15, 1962. He has made many decisions and has entered many orders, including a pretrial order establishing a trial schedule. It is the right of the litigants that the trial of the case proceed and that the judicial machinery shall not continue to be subjected to fitful starts and stops. These were the valid and timely considerations which were brought to bear in Blalock and in Boysen. They are determinative here. Judge Starley is not under a legal disqualification.

Consideration of an additional facet of the problem is necessary. As mentioned before, Judge Starley upon his marriage became related by affinity to Russell Bingley. At that time Bingley was a party to the suit in his capacity as a Director of Cameron County Water Control and Improvement District No. 16, one of the named defendants in Cause No. B–20576. This basis for disqualification of Judge Starley was later removed by Bingley's resignation as Director and by his dismissal as a party defendant. The parties to this proceeding have assumed that Judge Starley was disqualified so long as Bingley was a named party; they raise the question of whether it is necessary for the Chief Justice to re-appoint Judge Starley to empower him to act after the basis for his disqualification was removed by the resignation of Bingley as Director and his dismissal as a party.

The constitutional rule disqualifying a judge to sit in the trial of a case when a named party is related to him within the prohibited degree has generally been accepted as applicable no matter how remote and speculative the actual interest of the party-relative may be. This is the basis for the assumption that Judge Starley was under a disqualification so long as Bingley was a party in name.

■ Bingley was a named party only in his capacity as a director of the water district. He was one of a number of directors of the district. Under the necessities of this case, it was not a disqualifying circumstance that Bingley was named as a party in his capacity as director. Likewise, the problem of what interest will disqualify a judge to sit in the case is not to be equated with the problem of what interest will constitute one a necessary party to the suit. The disqualification of Judge Starley will not follow if it is later determined that Mrs. Davies and Mr. Bingley, and others similarly situated, are necessary parties to the pending suit.

No doubt Judge Starley will proceed to trial and the issuance of the writ of mandamus will not be necessary; if he does not do so, the writ will be issued.

NORVELL, J., not sitting.