**STATE of Texas et al., Appellants,**

**v.**

**The Honorable J. H. STARLEY et al., Appellees.**

**No. 286.**

Court of Civil Appeals of Texas.

Corpus Christi.

March 9, 1967.

Rehearing Denied and Respondent Starley's Motion to Modify Opinion Denied April 6, 1967.

Hawthorne Phillips and Roger Tyler, Jr., Austin, Neal King, of Hill, King & McKeithan, Mission, Frank Booth, Executive Director, Texas Water Right Commission, Austin, Garland Smith, Weslaco, Paul Greenwood, of Greenwood & Russell, Harlingen, for relators.

J. H. Starley, Pecos, pro se.

Melbert Schwarz, Jr., Baker, Botts, Shepherd & Coates, Houston, Albert E. Coneway, Harlingen, E. C. Henrichson, of Henrichson & Bates, Edinburg, Geo. D. Byfield, of Ewers, Toothaker, Ewers, Byfield & Abbott, McAllen, for respondents.

## OPINION

NYE, Justice.

This is an original proceeding filed in the Court of Civil Appeals seeking a writ of mandamus directing the Honorable J. H. Starley, Judge of the 93rd District Court of Hidalgo County to proceed to enter a final judgment in Cause No. B–20,576 on the docket of that court. The question involved is whether the judgment rendered and signed is a final appealable judgment or whether because of certain language contained therein, the judgment is interlocutory and therefore no appeal may lie.

The judgment before us consists of a foreword, a decree, a decision, extensive tables, maps and indices, all of which cover more than one thousand legal size pages. The record shows that a tentative draft of this judgment was handed down by the trial judge and distributed to the parties. All parties were given until July 15, 1966 to point out errors and mechanical mistakes to the court. A number of motions pointing out such errors and mistakes were filed and heard by the court. After making certain corrections and alterations to the tentative judgment the Honorable J. H. Starley, District Judge, signed and entered on August 1, 1966 what relators say "purports to be a final judgment." They say that certain language in the trial judgment by which the trial judge attempts to retain perpetual and continuing jurisdiction to change the water rights adjudicated, was objected to. Motions and oral argument by various parties were made advising the trial court the effect of such language and urging the court to make appropriate changes in such language in order that the judgment would be final and appealable. Judge Starley disagreed.

The judgment contains one certain paragraph, among others, which relators contend makes the instrument purporting to be the judgment of the court so intrinsical-

ly interlocutory in character that this appellate court will be without jurisdiction to reach the merits of this case on appeal. This paragraph is as follows:

*"THIS COURT RETAINS JURISDICTION OF THIS CAUSE AND THE ISSUES EMBRACED HEREIN AND UPON GOOD CAUSE SHOWN, MAY FROM TIME TO TIME MODIFY, ENLARGE OR ABROGATE ANY PORTION OR FEATURE OF THIS DECREE OR OF THE DECISIONS AND TABLES AND SECTIONS FILED HEREWITH AND MADE A PART HEREOF, BY ORDER OR SUPPLEMENTAL JUDGMENT OR DECREE TO BE ENTERED AT THE FOOT HEREOF * * *."*

Respondent Starley in defense of the language contained in this paragraph summarizes his reaction to it in his brief by saying:

"This 'open end' type of decree and judgment is not unusual, unique or an unheard of innovation by the trial court. While an exception to the general rule, it is in common usage in stream adjudications * * *."

The Supreme Court of Texas has characterized this particular case as one of great magnitude.[1] In order that we make a proper determination of the questions involved, it is necessary to review briefly the historical background of this litigation.

This class action suit was originally filed as Clause No. B–20,576 in the 93rd District Court of Hidalgo County, Texas, in 1956. The trial court took judicial custody of the American share of the waters of the Rio Grande River on October 17, 1956 from Falcon Reservoir to the Gulf of Mexico. The lawsuit was instigated by the State of Texas, by and through the Texas Water Commission as plaintiff. The Fifth

1. Hidalgo & Cameron Counties Water Control v. Starley, 373 S.W.2d 731 (Tex.Sup.1964).

Amended Original Petition, being the trial petition,[2] as well as the judgment shows that this is a lawsuit to adjudicate the water rights on this segment of the Rio

2. Pertinent portions of plaintiffs' fifth amended original petition stated in part as follows: " * * * Pursuant to the Constitution and Statutes of this State, the waters of the Rio Grande are public waters held by the State in trust for the use and benefit of every person, association of persons, public or private corporation, political subdivision of the State or agency of the State or the United States that has obtained or may obtain a lawful right to appropriate, impound, divert and use said waters for beneficial purposes authorized by law. Plaintiff is authorized and has a duty to administer the appropriation, impoundment, diversion and beneficial use of public waters of the State, as well as the establishment and regulation of an orderly system for the impoundment, release and diversion of stored waters. Pursuant to article 7550a, Vernon's Civil Statutes, Plaintiff is specifically authorized and empowered to adopt and enforce rules, regulations and orders when stored public waters are released from a reservoir on an international stream, which rules, regulations and orders may:

a. Establish an orderly system for water releases and diversions so as to protect vested rights and to avoid the loss of water released from storage for down-stream use;

b. Prescribe the time that such releases of water may begin and end;

c. Determine the proportionate quantities of the released waters in transit and the waters that would have been flowing in the stream without the addition of the released waters;

d. Require each owner or operator of a dam and reservoir on the stream between the point of release and the point of destination to allow the free passage through the dam and reservoir of all such released waters in transit; and

e. Establish such other requirements as may be necessary in the opinion of the Commission to effectuate the purposes of the Act."

Plaintiff goes on to contend that:

"Defendants are each persons, associations of persons, public or private corporations, political subdivisions of the State or agencies of the State who claim the right to use the waters of the Rio Grande * * *.

"Plaintiff would show the Court that the rights to appropriate, impound, divert and use waters of the Rio Grande claimed by Defendants are located downstream from Falcon Reservoir in Starr, Hidalgo, Cameron and Willacy Counties, Texas.

"Plaintiff cannot perform its statutory duties and trust until and unless the validity, priority of use in point of time, and duty of irrigation water of each and every right claimed by Defendants to appropriate, impound, divert and use the waters of the Rio Grande are judicially determined by this honroable Court. For these reasons there exists an actual, real, bona fide and justiciable controversy between Plaintiff and Defendants which necessitates judgment of the Court under the provisions of the Uniform Declaratory Judgment Act. (Article 2524–1, Vernon's Civil Statutes).

"Acting in its capacity as trustee and as the duly authorized agency of the State responsible for the administration and enforcement of the water laws of the State, Plaintiff alleges that it is ready, willing and able to perform its duties, as outlined above, subject only to the judgment of this Court as to the validity, priority and duty of irrigation water of Defendants' claims of right to appropriate, impound, divert and use the waters of the Rio Grande."

Plaintiff prays that: " * * * pending final judgment the Court continues its judicial custody of all waters of the Rio Grande and the allocation of the same through its Water Master for beneficial uses in accordance with all orders heretofore entered in this cause;

"That upon final hearing the Court determine the validity and priority in point of time of each and every right to appropriate, impound, divert and use waters of the Rio Grande claimed by Defendants;

"That the Court permanently enjoin those Defendants found without valid and subsisting water rights from the Rio Grande from appropriating, impounding, diverting or using waters of the Rio Grande;

"That as to those Defendants found by the Court to have valid and subsisting water rights from the Rio Grande, the Court determine the quantity or volume of water that lawfully may be appropriated, impounded, diverted and used for what beneficial uses recognized by law;

"That as to those Defendants found by the Court to have valid and subsisting water rights from the Rio Grande for irrigation use, the Court determine the duty of water and the land to which such rights are appurtenant;

"Together with costs of suit and such other and further relief, both in law and in equity, to which Plaintiff may be justly entitled."

Grande River system.[3] The Honorable W. R. Blalock, then Judge of the 93rd District Court presiding, certified his disqualification. An original mandamus proceeding was then filed in 1957 in the Supreme Court seeking to compel Judge Blalock to proceed to trial and judgment. The importance of this particular lawsuit was noted by the Supreme Court in its opinion wherein that Court stated that ordinarily they will not entertain jurisdiction of an original mandamus proceeding in a case where like jurisdiction is conferred upon the Court of Civil Appeals, unless it is made to appear that relief was first sought in that court.[4] The Court announced that this rule would not be followed in a case like the instant one where the question involved is of great importance to the state as a whole. It was argued that the qualifications of Judge Blalock should be determined by the Supreme Court because of the importance of this case and the gravity of the mistake which would be made if after having the case tried it should later be determined that Judge Blalock was disqualified. This same argument is presented to us to the effect that if it should later be determined that the judgment was not a final judgment, the appeal would have to be dismissed and the case returned to the trial judge for further proceedings or entry of a different judgment. The Supreme Court accepted jurisdiction and found Judge Blalock not disqualified and conditionally granted the writ of mandamus.

Subsequently, Judge Blalock was succeeded to the bench of the 93rd District Court by the Honorable Magus Smith. In 1961 the presiding judge of the Fifth Administrative Judicial District assigned the Honorable Woodrow Laughlin, Judge of the 79th District Court to serve as Judge of the 93rd District Court during the month of August. An attack was made on the qualifications of both Judge Smith and Judge Laughlin.[5] Judge Smith was held disqualified because he was attorney and counsel for certain named parties prior to his elevation to the bench. Judge Laughlin, sitting temporarily as Judge of the 93rd District Court, was held not disqualified to act.

Because of the disqualification of Judge Magus Smith, the Chief Justice of the Supreme Court, pursuant to art. 200a, Vernon's Ann.Tex.Rev.Civ.Stat.Ann., § 2a (3), assigned Judge Starley special judge to preside over the full trial of this case (Cause No. B–20,576 in the 93rd Judicial District Court). Judge Starley was a resident of Pecos, Texas and duly elected Judge of the 143rd Judicial Court and was so designated on June 15, 1962. There was no question concerning his qualification at that time. However, in 1963, an original mandamus proceeding was again filed in the Supreme Court of Texas because Judge Starley refused to proceed to trial because of a question of his qualifications as judge due to his marriage in that year and the relationship of his wife to two parties owning land in the water districts involved in the lawsuit. One concerned Mr. Bingley, brother of Mrs. Starley's mother, who was Director of Cameron County Water Control & Improvement District No. 16, one of the defendants in the suit. The Honorable Paul A. Martineau, Judge of the 28th

---

3. A portion of the judgment says : " * * * The claimed water rights involved are on the left bank of an international stream wholly within the territorial limits of the State of Texas and the sovereignty of the United States of America. The rights adjudicated here are rights to the use of the American share of the waters of the Rio Grande as that share is defined in the Treaty between the United States of America and the United Mexican States dated February 3, 1944, and ratified No-

vember 8, 1945, from Fort Quitman to the Gulf of Mexico, insofar as those rights apply to uses from Falcon Reservoir to the mouth of the Rio Grande."

4. Hidalgo County Water Improve. Dist. No. 2 v. Blalock, 157 Tex. 206, 301 S. W.2d 593 at 594.

5. Hidalgo County Water Con. & Imp. Dist. No. 1 v. Boysen, 354 S.W.2d 420, (Tex. Civ.App.—San Antonio 1962, wr. ref'd).

District Court, sitting for Judge Starley, dismissed this defendant as a party, after his resignation as director, and Judge Starley's qualifications as judge were held valid.[6] Other aspects of this same case were finally determined in a prior appeal.[7]

This case is now popularly referred to as "The Valley Water Case". Much has been written about the importance and cost involved.[8] Over ten years have now passed and this case is now at the threshold of the appellate courts. There are many, many parties to the cause. It therefore is incumbent upon us to determine at the outset whether the relators and respondents in this mandamus proceeding fairly represent all classes claiming rights in and to the waters of the Rio Grande River.

 The State of Texas as plaintiff and the other relators are all parties to this suit and are listed on Exhibit A of the petition for mandamus. The respondents are the Honorable J. H. Starley, Judge Presiding of the 93rd District Court of Hidalgo County and one or more individuals or corporations representing the following classes: "certified filings", "permits", "treaty", "Falcon" and "no water rights." Relators' petition avers that the parties are so numerous it makes it impractical to bring them all before this Court in this mandamus action. However, they contend that the various classes fairly represent all parties adverse to relators in

this the "Valley Water Suit." Notwithstanding all of the possible controversies which may arise on appeal, all of the attorneys of record in the said "Valley Water Suit" have been given notice of the petition for mandamus and it is further contended that the respondents represent all classes of claimants of all of the various rights or lack of rights in and to the use of the water of the Rio Grande River. Service has been had on the representative members of the various classes set forth above. These particular allegations in the petition are not denied by any of the respondents and we accept them as true. Such class action procedure in a mandamus proceeding is applicable the same as in other proceedings. Hidalgo County Water Improve. Dist. No. 2 v. Blalock, 157 Tex. 206, 301 S.W.2d 593; City of Houston v. Allred, 123 Tex. 334, 71 S.W.2d 251 (Tex. Comm'n App.1934, opinion adopted). We hold that the joinder of the named respondents herein, fairly insures the adequate representation of all members of the various classes.

Respondent W. H. Drawe, individually and representative of the class and category of those persons holding treaty rights and joined therein by respondent Honorable J. H. Starley, pro se, move to dismiss the petition for mandamus. It is their contention that relators have adequate remedy at law by appeal; that the extraordinary writ of mandamus does not apply and that

6. Hidalgo and Cameron Counties Water Control and Improvement Dist. No. 9 v. Starley, 373 S.W.2d 731, (Tex.Sup. 1964).

7. State v. Valmont Plantations, 346 S.W. 2d 853 (Tex.Civ.App.—San Antonio 1961, wr. ref'd).

8. In an article written by James W. Wilson, 29 Texas Bar Journal, No. 11, p. 1016, importance and expenses of this case are discussed by the author: " * * * At issue in this litigation (The Valley Water Case) are claims to irrigate 850,-000 acres of land and the municipal and industrial water for a population of half a million people. Forty-two water districts and approximately 2,500 individual

claimants are parties. Bringing the parties before the court under the usual rules and the handling of pleadings alone involved an almost insuperable task. The taking of testimony required eleven months during which more than 90 lawyers participated. Nearly 3,000 documentary exhibits were introduced and 25,000 pages of testimony were prepared. Almost $1 million in court costs have been incurred, primarily by the court-appointed water-master. The Water Commission and the Attorney General have spent more than $300.000 in State funds in the preparation and trial of the case, .and the parties have spent many times that amount for legal expenses. * * * " (parentheses supplied)

an appellate court may not use the extraordinary writ of mandamus procedure to correct errors of law committed in the trial of the case by a trial court.

 The Court of Civil Appeals has jurisdiction under Tex.Rev.Civ.Stat.Ann. art. 1824, to compel a judge of the district court to proceed to trial and *judgment* in a cause. Relators argue that unless the judgment herein is considered as to its finality or lack of finality in this mandamus proceeding, there is danger of tremendous expense being incurred in assembling the record for appeal by a host of parties, the briefing of extensive points of error, and then having such an expensive appeal dismissed because of the interlocutory nature of the judgment signed, rendered and entered by the trial court. The unreasonable delay caused by such procedure will cause great hardship on all parties alike, and that mandamus is the only remedy to which relators can resort to determine the finality of the judgment. That without this determination and if the judgment is interlocutory, then the appeal most certainly will be dismissed and their efforts will be of no avail.

It has been argued by other respondents that they do not desire that this Court of Civil Appeals avoid passing upon issues raised by these proceedings because of technical reasons inherent in mandamus proceedings. They argue forcefully that because of the seriousness of the problem, the magnitude of the proceedings and the importance of this unique water case in the annals of the history of our jurisprudence,

this Court should either grant the writ of mandamus, or if it be refused it should be because the Court is convinced that the judgment in question is final for purposes of appeal.

Not unlike the recurring problem of the qualifications of the judges sitting in this case, is the seriousness of the problem of the finality of the judgment entered for the purpose of appeal. The magnitude and importance of the decision in this case is reflected by our Supreme Court through Mr. Justice Steakley in Hidalgo & Cameron Counties Water Control and Improvement Dist. No. 9 v. Starley, 373 S.W.2d 731.[9]

 There is no question that the trial judge intends that the instrument before us be the final judgment of the trial court. In view of the importance of these proceedings before us and because the trial court has intended his entry of this instrument to be a final judgment we conclude that we have jurisdiction to consider this mandamus proceeding. The entry of a final judgment is a ministerial act and may be compelled. Willis v. Graf, 257 S.W. 664 (Tex.Civ.App. —Texarkana 1923, wr. dism'd.) ; McDonald Texas Civil Practice 1319, Judgments, § 17.05, note 47.

Is a judgment in a water proceeding any different than any other judgment under the law of the State of Texas? Respecting its finality?

The Supreme Court, through its Chief Justice, said recently:[10]

"The finality of judgments of appealability has been a recurring and nagging

9. "The pending case is one of great magnitude. It was filed by the State in 1956 to obtain an adjudication of the water rights to the American share of the waters of the Rio Grande River. The fifth amended original petition of the State names approximately three thousand defendants who claim the right to use water from the Rio Grande for a variety of uses, including the irrigation of over 850,000 acres of land situated in the Counties of Starr, Hidalgo, Cameron and Willacy. Relators represent that the trial of the case will extend over a period of years, and that the costs involved in the litigation,

and in the allocation and distribution of the supply of water of the Rio Grande and that stored in Falcon Reservoir, pending final judgment, will reach hundreds of thousands of dollars. Relators further represent that at least twenty-five thousand individual landowners located within the districts which are named as parties in the suit will be vitally affected by the ultimate decision in the case." 373 S.W.2d 731 at page 732.

10. North East Independent School District v. Aldridge, 400 S.W.2d 893, beginning page 895, et seq. (Tex.Sup.1966).

problem throughout the judicial history of this State. We have steadfastly adhered through the years to the rule, with certain exceptions not applicable here, that an appeal may be prosecuted only from a final judgment and that to be final a judgment must dispose of all issues and parties in a case. Citing cases. *The rule is deceiving in its apparent simplicity and vexing in its application."*

The Court, after discussing a number of cases and decisions of this State, goes on to say:

"* * * Analysis of the decisions we have discussed is sufficient to lead us to the statement of a rule for determining, in most instances, whether judgments in which parties and issues made by the pleadings are not disposed of in express language are, nevertheless, final for appeal purposes. When a judgment, not intrinsically interlocutory in character, is rendered and entered in a case regularly set for a conventional trial on the merits, no order for a separate trial of issues having been entered pursuant to Rule 174, Texas Rules of Civil Procedure, it will be presumed for appeal purposes that the Court intended to, and did, dispose of all parties legally before it and of all issues made by the pleadings between such parties. * * *"

The Court, after discussing an exception not applicable here, says:

"* * * Of course, the problem can be eliminated entirely by a careful drafting of judgments to conform to the pleadings or by inclusion in judgments of a simple statement that all relief not expressly granted is denied." 400 S.W.2d 893. (emphasis supplied)

There are certain aspects and language contained in "this judgment" that gives it the dignity of finality. For instance it contains the recommended phrase from the Supreme Court case above cited.[11] There is the intention to pass on all issues[12] and to dispose of all of the parties to the lawsuit.[13] Following the paragraph where the court attempts to retain jurisdiction to modify, enlarge, or abrogate any portion or feature of the decree from time to time upon good cause shown the court says of his judgment, that nevertheless the judgment shall be considered as being final and not interlocutory.[14]

▮▮▮ To determine whether a judgment is final or interlocutory its substance, rather than its form or even the name given to it, will be considered as controlling. An interlocutory judgment leaves for the future determination some material question connected with it. See 30A Am.Jur. 240–241, Judgments, §§ 121 and 122.

11. "IT IS FURTHER ORDERED, ADJUDGED and DECREED by the Court that any relief sought by any party not specifically granted herein is hereby denied, and that each party or parties so aggrieved shall have an exception to this Judgment and for the purposes of the record shall have been held to have timely given notice of appeal."

12. In the foreword of the judgment is said: "Section III is intended to pass upon every claim of right asserted by the individual parties to this cause, to establish the priority date recognized, and the extent and number of acres to which such rights are recognized."

13. A portion of the judgment, for instance, states: "* * * The Court is unable to define 'surplus water' and does not attempt in this proceeding to adjudicate the relationship of such parties. They are severed and left to such recourse as may be available to them."

14. "That the Court so retaining jurisdiction of this cause and custody of the American share of the waters of the Rio Grande under said Treaty shall not be held to make this an interlocutory or temporary order of the Court, but shall be considered as a Final Judgment of the Trial Court herein, and appeal therefrom shall lie to any Court as may be provided by law."

Relators contend that if the trial court has retained jurisdiction to modify, enlarge or abrogate the adjudicated rights and priorities of the parties from time to time, the judgment is interlocutory and not final. The relators contend that other features of the judgment relating to the disposition in the judgment of claims to municipal, domestic and livestock water rights also renders the judgment not final.[15] Relators contend that the language in the first paragraph quoted in footnote 15 reserving the power in the court "to alter this limitation on municipal use, renders the judgment of 2.5 acre-foot acre limitation a nullity. Relators also contend that the third, fourth and fifth paragraphs quoted in footnote 15, evidences an intention to make future annual allocations of water for non-municipal domestic and livestock use, whereas, the judgment makes no adjudication of such rights. For this additional reason, relators say the judgment is interlocutory and not final.

■■■ The judgment should be read as a whole and each part should be interpreted with reference to its entirety and if possible, effect should be given to all its provisions. In the event the judgment is capable of two constructions, only one of which correctly applies the law, then that construction will be adopted. 4 McDonald Texas Civil Practice 1337, Judgments, § 17.10; Gough v. Jones, 212 S.W. 943 at 944 (Tex.Com'n App.1919, opinion adopted).

Respondent Starley argues that "this 'open end' type of decree and judgment is not unusual, unique or an unheard of innovation by the trial court. While an exception to the general rule, it is in common usage in stream adjudications." It is true that the power of courts of equity in various states to provide for the enforcement of their own water decrees through the use of a water master responsible to the court, has been recognized from the very earliest days in the history of water rights litigation. Supervision by some administrative

---

15. The basis of the court's determination of such rights is set out in the judgment as follows:

(1) "Domestic or urban allocation of water shall be figured at the maximum allowed for beneficial use for irrigation purposes, viz: 2.5 acre-feet per acre per annum of land actually occupied by an urban use. Experience and change of conditions may require the Court to alter this limitation from time to time.

(2) "The beneficial use of water for domestic and urban uses shall be the limit of the right to, but never to exceed, 2.5 acre-feet per acre per annum, and such water as may have been annually allotted and not beneficially used shall revert to the common pool.

(3) "Allocation of water for domestic and livestock use to persons located in rural areas outside of the urban areas of cities, towns, villages or municipalities to which specific rights have been granted by this judgment, and to or for whom no water for such uses or purposes has otherwise been provided or allotted in this judgment, who obtain water for such purposes by taking it directly from the Rio Grande, or are supplied by parties authorized to divert water from the Rio Grande or to whom a water right has been recognized under the terms and provisions of this judg-

ment, shall be calculated in the manner hereinafter provided.

(4) "Domestic, livestock, municipal and urban allocations of water shall be proposed by the Master in Chancery or other administrative agency applying this judgment on or before the first Monday in November of each calendar year, and such proposed allocations shall be distributed among the users of water hereunder on or before said date. On the first Monday of December of each year any interested person in the subject matter of the suit may appear before the Court to show cause, if any he has, why such proposed annual allocation of water for such uses may not be proper; and upon showing of good cause, the Court may enter an order affirming, modifying or changing such allocation for good cause.

(5) "The formula for calculating the annual allocation to the respective diverters for domestic, municipal and urban uses shall be a matter for computation for the Master in Chancery or other administrative agency applying the judgment based upon the standard accepted engineering formulae, including, but not limited to, factors of population; area occupied, water transportation losses, et cetera."

official or board has been practiced almost as long as the use of a water master responsible to the court which accomplishes the same purpose. Various degrees of authority have been given to the courts and administrative agencies to accomplish the desired results. Certainly, there are times when the fluctuating flow of a stream, and the complexities of carrying out a decree adjudicating the rights and priorities, call for the continued supervision by some arm of our government during critical periods. There are three basic procedures for adjudicating and administering water laws in the western states. The students of water law recognize these three systems as the "Colorado system", the "Wyoming system" and the "Oregon system". It is a matter of history in Texas that the Texas Legislature at one time adopted a system patterned after the "Wyoming system".

The "Wyoming system" is one where the water rights are determined at the administrative level and such determination becomes final unless appealed by aggrieved parties to the court. The system was adopted in Texas in 1917 but held unconstitutional in 1921 by the Supreme Court of Texas in Board of Water Engineers v. McKnight, 111 Tex. 82, 229 S.W. 301 (Tex. Sup.1921). In that case administrative determinations were invalidated in Texas as an unlawful delegation of judicial functions to administrative agencies in violation of the "separation of powers" of the Texas Constitution, Vernon's Ann.St. (art. II, § 1). This decision was overturned, at least in part, by the Supreme Court of Texas in Corzelius v. Harrell, 143 Tex. 509, 186 S.W.2d 961 (1945). In that case the Supreme Court distinguishes its "McKnight" holding by pointing out that the water statutes were enacted prior to the adoption of the conservation amendment to the Texas Constitution, art. XVI, § 59.

There is language used in the decisions and decrees of some states which would lead one to believe that in stream adjudications there exists an exception to the general rule of finality in the judgment. Such retention of power in some states by the trial court, not only extends to the rights adjudicated by the court, but such power goes further and extends to undecreed rights. In California, for instance, in a landmark case, the Supreme Court of that state made the following statements in its opinion, which are typical of what the respondents call "open end type of decrees". City of Pasadena v. City of Alhambra, 33 Cal.2d 908, 207 P.2d 17 at pages 34 and 35. The opinion says in part:

"* * * in the event that such local shortage (of water) should take place, appellant may obtain relief under that portion of the judgment reserving jurisdiction to make such modifications as may become necessary." (parenthesis supplied)

Again the Court said:

"* * * Moreover, ample protection against such a danger (unrestricted pumping) is afforded by the provisions of the decree reserving jurisdiction in the trial court to modify the judgment. * * *" (parenthesis supplied)

And again the Court said:

"* * * In view of the necessity of securing a present solution for the critical situation in the basin area, the court was justified in leaving open for future determination the rights of appellant as against all such diversioners, * * *"

And at another place in the opinion, the Court said:

"* * * Appellant concedes that the court would have power to retain jurisdiction to readjust the rights of the parties in accordance with the law. * * *"

We ask ourselves the question: Why do the parties in the California courts concede that the court had the power to retain jurisdiction to readjust the rights of the parties? * * * and in accordance with what law?

The Supreme Court of California answers these questions when it says:

"The retention of jurisdiction to meet future problems and changing conditions is recognized as an appropriate method of carrying out the policy of the state to utilize all water available." (citing cases).

Our search of these cases and a check of the constitutional amendment in California, reveals that it is the declared policy of the State of California that requires that the water be put to the fullest beneficial use capable, in the furtherance of the interests of the people of that state. California Constitution, art. XIV, § 3 (Constitutional Amendment of 1928). The key to the answer of the foregoing questions is contained in the last sentence of this constitutional amendment, which says:

"This section shall be *self-enacting,* and the Legislature may also enact laws in the furtherance of the policy of this section contained."

In Texas, our Constitutional Conservation Amendment is *not self-enacting.* Article XVI, § 59(a), provides in part that:

"The conservation and development of all of the natural resources of this State, including * * * the waters of its rivers and streams, for irrigation, power and all other useful purposes, the reclamation and irrigation of its arid, semi-arid and other lands needing irrigation, * * * and the preservation and conservation of all such natural resources of the State are each and all hereby declared public rights and duties; and the Legislature shall pass all such laws as may be appropriate thereto."

The Supreme Court of Texas in City of Corpus Christi v. City of Pleasanton, 154 Tex. 289, 276 S.W.2d 798 (1955) said of this Conservation Amendment:

" * * * the people adopted the Conservation Amendment, Article XVI, §

59, to the Constitution declaring the conservation of the state's natural resources, including water, to be a public right and duty. But the *Amendment was not self-enacting.* By the very terms of the Amendment the duty was enjoined upon the Legislature to implement the public policy found therein. * * *" (emphasis supplied)

The Court then quoted the mandate of the Legislature to *"pass all such laws as may be appropriate thereto",* and said:

"No such duty was or could have been delegated to the courts. It belongs exclusively to the legislative branch of the government. * * * The power (to legislate concerning this constitutional Conservation Amendment) certainly does not lie with the courts to usurp the legislative function * * *." (parenthesis supplied).

In a very learned opinion by the former Chief Justice McClendon of the Austin Court, speaking of this constitutional amendment, (Art. XVI, Section 59(a), said that it " * * * evidences a clear and explicit purpose to conserve the public waters of the State and to develop their use in the public interest. To this end the express affirmative duty is enjoined upon the Legislature '(to) pass all such laws as may be appropriate thereto'. This general public policy was thereafter carried forward into our water laws. * * *" Clark v. Briscoe Irr. Co., 200 S.W.2d 674 (Tex.Civ.App.—Austin 1947).

The respondents rely on the case of State of Arizona v. State of California, 376 U.S. 340 at page 351, 84 S.Ct. 755 at page 762, 11 L.Ed.2d 757, as authority for an "open end" type judgment in Texas. This case is a recitation of the decree of the Supreme Court of the United States which permits the parties to apply at the foot of the decree for amendment or for further relief and states that:

" * * * The Court retains jurisdiction of this suit for the purpose of any order,

direction, or modification of the decree, or any supplementary decree, that may at any time be deemed proper in relation to the subject matter in controversy."

A careful reading of the opinion of the Supreme Court of the United States at 373 U.S. 546, 83 S.Ct. 1468, 10 L.Ed.2d 542, shows that various legislative acts of Congress, exercising its constitutional power provided the statutory means by which the parties could obtain "open-end" relief.

Respondents further rely upon Montezuma Canal Co. v. Smithville Canal Company, 218 U.S. 371, 31 S.Ct. 67, 54 L.Ed. 1074, as authority for the continued jurisdiction of the trial court. The Supreme Court of the United States said that:

"* * * the absence of legislative action on the subject, and of the necessity which manifestly existed for supervising the use of the stream by those having the right to take the water in accordance with the decree which, undoubtedly to that extent, the court was authorized to render, we think the action taken by the court did not transcend the bounds of judicial authority, and therefore is not justly amenable to the attack made upon it."

In an opinion by the Supreme Court of Arizona in this same case, reported at 11 Ariz. 99, 89 P. 512, the Court said of the assignment of error:

"that the court erred in appointing a water commissioner to carry out the court's decree; the contention of the appellant being that the court has by such appointment of a water commissioner given judicial functions to such officer, and that a delegation of judicial functions to an executive officer of the court is beyond the power of the court. * * *"

The Court said in part:

"* * * it is obvious that such a decree cannot be *self-executing,* and that it is essential that an officer of the court be continuously upon the river to regulate the amount to be diverted under the decree by each canal, * * *"

The Court went on to say:

"* * * it is necessary that the rules and regulations be formulated by such officer, (appointed by the court) and he must be empowered to make such rules and regulations as are reasonable and necessary to carry out the provisions of the decree. * * * the power given by the court to such commissioner is an administrative discretion, and not a judicial discretion."

Of this above language the Supreme Court of the United States said:

"* * * that the appointment of the commissioner was a proper choice of a method to carry the decree into effect; and that the appointment was authorized as well by a section of the Revised Statutes of the territory, providing that 'the court shall cause its judgment and decree to be carried into execution', as by the power which the court possessed by virtue of its 'general jurisdiction to provide all necessary means to carry out its judgment and decree.'

*It would indeed seem that the decree was modeled upon legislative remedies provided for similar situations in other jurisdictions, as the decree and the remedies which it affords bear a peculiar resemblance to legislative provisions enacted in some of the states where irrigation is practised, to control and regulate the use of water for irrigating purposes. * *"* (emphasis supplied)

The Court goes on to say that:

"* * * because it was within the legislative power to provide administrative machinery to supervise the common use of water in a flowing stream by those having a lawful right to appropriate the water of that stream for beneficial use, it does not result that the

decree entered by the court below was in excess of its authority. * * *"

It is easy to distinguish this case originating from the territory of Arizona in 1910 from the Constitution and the laws of the State of Texas today. A portion of this trial court's judgment was copied from a trial court's judgment from the territory of Arizona rendered also in 1910. Arizona has since adopted a system of water adjudication similar to that of California which is based on the "Oregon System". Texas does not have the "Oregon System."

Respondents cite as more convincing authority the Ward County Imp. Dist. No. 3 v. Ward County Irr. Dist. No. 1 by the Supreme Court of Texas.[16] Here the Supreme Court said in reforming the judgment of the Court of Civil Appeals, that:

" * * * since the courts are scrupulously careful to prevent the waste of water by its diversion into channels where it cannot be reasonably used" * * * (it is) * * * "expressly adjudge that nothing contained in the judgment shall prevent the trial court from modifying the judgment at any time in the future, on proper application and showing, in such manner as to prevent defendants in error from withholding from plaintiffs in error water beyond the amounts for which defendants in error have use, on their lands both riparian and nonriparian. * * *"

A study of this case shows that the water rights of the affected parties had already been adjudicated.[17] Here a rather unique method of distributing water was decreed by the court based upon a jury's finding that the most practical and economical method of distributing the water was to give one of the water rights' parties the exclusive flow of the river for a certain number of days, and the other water rights' parties the exclusive flow of the river for the balance of the month. It is obvious that this was an equitable method of distributing the flow of the stream where the other method proposed would not have provided the beneficial results desired.[18] The Supreme Court cited 3 Kinney on Irrigation and Water Rights, 2nd Div., pages 2822, 2823, as authority for this mode of distribution. The Supreme Court recognized that there was more than one way in which the just proportion of the water rights previously adjudicated could be distributed to the various parties. That it, for instance, might be more economical to give one party a certain exclusive time to irrigate their land than to divide the available water. In affirming the judgment, the court was mindful of the contention raised by the plaintiffs in error that the decree might give the defendants in error, water in excess of their needs to the detriment of the plaintiff. It therefore followed that the Supreme Court said that there was nothing in the decree that would prevent the trial court from modifying its judgment in the future to prevent the defendants in error from withholding water beyond the amounts for which they have use.

It has been ably said concerning the adjudication and supervision of water rights that:

"The problem with which we deal is basically one of management—management of a natural resource which is indispensable to all animal and plant life. The problem arises from the indigenous characteristics of water itself and the complex bundle of legal principles which make up the water right. It is complicated by the reliance of many users on a common source of supply where the

16. 117 Tex. 10, 295 S.W. 917 (1927).

17. See also Ward County Water Imp. Dist. v. Ward County Irr. Dist., 237 S.W. 584 at 587 (Tex.Civ.App.—El Paso 1922).

18. The Texas Law of Water Rights, Wells A. Hutchins, p. 285.

acts of each have an impact upon the rights of all." [19]

It is further complicated by the lack of legislation. Justice Pope in a Texas water case said:

"This case presents procedural problems of stream litigation occasioned by the absence of rules and statutes suited to this special class of case. * * * " [20]

The trial court in its judgment attempts to explain its innovations and procedures resorted to [21] where the Legislature has failed to remedy the situation, though suggestions have been made by the Supreme Court of Texas and others over the years. [22]

A reading of the so called offending portions of the judgment in a broad sense would give rise to the belief that the trial judge had entered an interlocutory order reserving unto itself continued power and jurisdiction to adjudicate continually any portion of the decree at any time in the future.

With this background in mind we ask ourselves this question. Can a trial court retain jurisdiction for any reason? In general, the answer is "No". There can be only one final judgment and it must dispose of the issues and parties named by the pleadings at the time of the trial and finalize in one judgment. However, there are some exceptions to this rule: The case of receiverships, for instance, where the court can and must enforce its decree. This is analogous of the court's equitable powers where the Texas Rules of Civil Procedure (Rule 308) direct the court to cause its judgments and decrees to be carried into execution. In a great number of the western states where water adjudication has been a problem, it has been dealt with through constitutional provisions and statutory laws. These states have laws permitting certain administrative agencies or the courts, or both, to retain jurisdiction in water adjudication cases. In Texas we have a particular statute which permits this trial court to retain jurisdiction, but limits the court to the period of time pending appeal of the case. Tex.Rev.Civ.Stat.Ann. art 7589b. [23]

---

**19.** Adjudication of Stream Rights and Supervision of Diversion, Proc. Water Law Conference, Univ. of Texas, Pages 64–73 (1959), Victor W. Bouldin.

**20.** Maverick County Water C. & I. Dist. No. 1 v. City of Laredo, 346 S.W.2d 886 at 887, (Tex.Civ.App.—San Antonio, 1961, ref'd n. r. e.).

**21.** A portion of the trial court's judgment says:
"Therefore, the necessities of this case have required this Court to resort to innovations in procedures and in exercise of powers that probably no other trial court in Texas has been called upon to invoke. A court of equity has such powers as are essential to its function to adjudicate water rights upon a stream and enforce its decrees. This Trial Court consciously knew that some procedures were being used that did not carry the sanction of a statute or an express rule of court promulgated by the Supreme Court. This Court did bear in mind, being a court of equity, that as long as every litigant—

actual or potential—was given a full right to be heard and a full right to develop any and all facts within cognizable rules of evidence, such record would be given full and adequate review by the appellate courts. If the trial court errs through its ignorance, the appellate courts will see that no one's rights, if such rights ever existed, have been confiscated or otherwise denied to them by the end results."

**22.** City of Corpus Christi v. City of Pleasanton, 154 Tex. 289, 276 S.W.2d 798 (Tex.Sup.1955). See also "Inadequacies of Existing Texas Procedure for Determination of Water Rights on Major Stream Systems" Proc. Water Law Conf., Univ. of Texas, pp. 66–73 (1956), Neal King; "Adjudication of Water Rights", 42 Tex.L.Rev. 121 at 131, Corwin W. Johnson.

**23.** Art. 7589b. Water master; appointment and authority; diversion of waters of surface streams; suits
Section 1. Application of act; watermaster; appointment and authority. The

Next, the question pertains as to how far can the trial court go with this authorized retention of jurisdiction? Art. 7589b limits the court to the administra-

provisions of this Act shall apply in any suit to which the State of Texas is a party and *the purpose of which suit is to determine the rights of parties to divert or use the waters of a surface stream* in which suit rights are asserted to divert or use such waters in not more than four (4) counties, *the Court having jurisdiction over such suit is authorized to appoint a water master with power to allocate and distribute the waters taken into judicial custody under the supervision and direction of the Court.* In no event shall the Court be authorized to appoint a water master as herein provided to act both upstream and downstream from any reservoir constructed on any surface stream of this State existing at the time of such original appointment, but once a water master has been appointed as herein authorized, the construction of a new reservoir on that portion of a stream over which a water master has heretofore been, or may hereafter be, appointed, shall not void such appointment nor restrict the authority of such water master to act both upstream and downstream from such new reservoir within that portion of the stream contemplated by the original order of appointment.

Sec. 2. Deputies and assistants; powers and duties.

Sec. 3. Compensation; expenses; assessment of cost.

Sec. 4. Determination of distribution of cost and expenses.

Sec. 5. Jurisdiction and powers of court. The Court having jurisdiction of any suit described in Section 1 of this Act in addition to all other jurisdiction, powers and authority provided for by the Constitution and laws of this State may withdraw or limit allocations of water to any party who violates any order of the Court for such time as such party continues his violation.

Sec. 6. Provisions cumulative.

Sec. 7. Severability provision.

Sec. 8. Emergency clause.

Sec. 9. Jurisdiction during appeal; administration, allocation and distribution of waters. In any such case where the Trial Court has taken such waters into judicial custody and has appointed a water master and has entered final judgment adjudicating and determining the asserted rights of the parties to divert or use such waters from which judgment an appeal is prosecuted by one or more parties, *the Trial Court shall have and is hereby vested with, jurisdiction to retain all waters so taken into judicial custody in such custody until the entry of final judgment in the case and until such time shall have exclusive jurisdiction to administer, allocate and distribute such waters in accordance with its final judgment* or as otherwise herein provided in Section 10 and such retention of jurisdiction for such purposes shall not render the judgment of the Trial Court nonappealable and neither the Court of Civil Appeals nor the Supreme Court shall have jurisdiction over the allocation and distribution of such waters so remaining in the judicial custody of the Trial Court prior to the entry of final judgment in the case.

Sec. 10. Manner of allocation of waters during appeal; supersedeas bond; effect; adjustment in allocation. *The allocation and distribution of such waters during the pendency of appeal and until final judgment or decree in such case shall be limited to those parties adjudicated by the final judgment of the Trial Court to have a valid right to divert or use such waters upon the land, and in the amount, as provided by such judgment and to no other parties:* provided, however, that if any party or parties prosecuting an appeal from such final judgment of the Trial Court files a supersedeas bond as provided by law or the Rules of Civil Procedure, there shall continue to be allocated to such party or parties so filing such supersedeas bond or bonds the same amount of water, for the same acreage, for which they received an allotment during the pendency of the case in the Trial Court and before the entry of final judgment by the Trial Court, in which event all necessary adjustments in the allocation and distribution of waters among those parties adjudicated by the final judgment of the Trial Court to have a valid right to divert or use the same shall be made in order to provide for allocation and distribution to both such parties and the parties filing a supersedeas bond on appeal. Save as so limited, the enforcement of the judgment of the Trial Court shall not be suspended during any such appeal and the filing of and such supersedeas bond shall only have the effect of suspending the enforcement of such judgment against the party filing the same.

Sec. 11. Violation of court orders; use of water in excess of allocation; withdrawal of allocation; notice and hearing; punishment. During the prosecution

tion, allocation and distribution of the water. (Art. 7589b, § 9). The court may protect its orders by injunctive relief during the pendency of the appeal. (Footnote 23, sec. 11) The trial court's power and jurisdiction is therefore limited to special statutory law and the general laws of equity. The court's authority does not, however, extend any further, nor is it more extensive, just because this is a water adjudication case.

When we view the trial court judgment along with this statutory provision and others that are applicable, we do not find that such judgment is interlocutory. The language in it is an expression by the court of its authority under statutory law enacted in accordance with the mandate of the Constitution of Texas (Tex.Const. art. XVI, § 59). The court "may enlarge or abrogate or modify from time to time any portion or feature of the decree" so long as such is confined to the "administration, allocation and distribution of the water" in accordance with the adjudicated rights determined by the court. All other language in the judgment in conflict with the laws of this state would be surplusage. See 49 C.J.S. Judgments § 84, p. 206.

In view of the fact that the Constitution of Texas imposes the obligation upon the Legislature to enact the laws necessary to "control", "preserve" and "distribute" the waters of this state, "for irrigation" and "other useful purposes", the trial court is necessarily limited to that which has been authorized by law and equity. We do not believe that the trial court's judgment has transcended the limitations imposed by the Legislature. Therefore, the judgment entered is final. Relators' application for Mandamus is denied.

SHARPE, J., not sitting.

of appeal and until the entry of final judgment in the case the Trial Court shall have, and is hereby granted, power and authority, after notice and hearing, to withdraw or limit allocations of water in the judicial custody of the Court to any party who violates any order of the Court or who uses water in excess of the amount allocated to such party or upon land other than that for which the allocation of water is made as provided by the final judgment or as hereinabove provided until such violation has been corrected to the satisfaction of the Trial Court or the water so used made good and in addition thereto shall have the power to punish any such party for contempt for violation of any injunction contained in the judgment of the Trial Court.

Sec. 12. Continuation of water master during appeal. *During the prosecution of such appeal and until the entry of final judgment in the case, the Trial Court is authorized to continue the appointment of the water master with power to allocate and distribute the waters in the judicial custody of the Trial Court as provided in Section 10 of the Act, under the supervision and direction of such Court.*

Sec. 13. Deputies and assistants during appeal; powers and duties; expenses. During the pendency of such appeal and until the entry of final judgment in the case the water master shall, under such terms and conditions as the Court may order, have authority to appoint such necessary deputies and assistants and to perform such duties and assume such responsibility as may be delegated to him by the Trial Court, including the power to police the stream and advise the Court of violations of the Court's allocation of any waters within the judicial custody of the Court, as provided by the final judgment of the Trial Court or as hereinabove provided, and to incur such expenses as the Trial Court may deem reasonable and necessary.

Sec. 14. Compensation during appeal; assessment of costs.

Sec. 15. Determination of distribution of costs and expenses during appeal. (emphasis supplied).