HIDALGO COUNTY WATER IMPROVEMENT DISTRICT NO. 2, ET AL.
v. HONORABLE W. R. BLALOCK, JUDGE OF THE
93RD DISTRICT COURT OF HIDALGO
COUNTY, TEXAS, ET AL.

No. A-6239. Decided April 17, 1957.
Rehearing overruled May 22, 1957.
(301 S.W. 2d Series 593.)

*Strickland, Wilkins, Hall & Mills* and *Harrly L. Hall, Hill, Lockridge & King* and *Neal, King,* all of Mission, *Sharpe, Cunningham & Garza* and *Paul Y. Cunningham,* of Brownsville, *Gibbon, Klein & Ferrero* and *Arthur A. Klein,* of Harlingen, *Crain & Colvin,* and *Norton A. Colvin,* of San Benito, *Sawnie B. Smith,* of Edinburg, *Ewers, Cox, Toothaker, Elick & York* and *Charles Elick,* all of McAllen, for Relators, Water Control and Improvement District.

*Will Wilson,* Attorney General of Texas, *James N. Ludlum, James W. Wilson,* Assistants Attorney General, for respondent State Board of Water Engineers, and W. R. Blalock, District Judge, in pro. per.

MR. CHIEF JUSTICE HICKMAN delivered the opinion of the Court.

By this original proceeding relators seek a writ of mandamus directing and requiring Honorable W. R. Blalock, Judge of the 93rd District Court of Hidalgo County, to proceed to the trial of Cause No. B-20,576 on the docket of that court. The sole question involved is whether Judge Blalock is disqualified to try the case under Article V, Section 11, of our State Constitution, more specifically under that provision thereof reading as follows: "No judge shall sit in any case wherein he may be interested, * * *." It is not claimed that he is disqualified on any other ground.

■ This court has jurisdiction to issue a writ of mandamus to compel a district judge to proceed to trial and judgment. Constitution of Texas, Article V, Section 3; Revised Civil Statutes, 1925, Articles 1733 and 1734. The Court of Civil Appeals also has jurisdiction to issue a writ of mandamus for that purpose. Revised Civil Statutes, 1925, Article 1824.

■ In Dallas Railway & Terminal Co. v. Watkins, 126 Texas 116, 86 S.W. 2d 1081, we announced the rule that, owing to the great volume of business coming before this court it will not entertain jurisdiction of an original mandamus proceeding in a case where like jurisdiction is conferred upon a Court of Civil Appeals, unless it is made to appear that relief was first sought in that court. That rule will not be followed in a case like the instant one, where the question involved is of great importance to the State as a whole. State v. Ferguson, 133 Texas 60, 125 S.W. 2d 272.

The relators are a number of water improvement districts and water control and improvement districts in Hidalgo and Cameron Counties. The respondents, besides Judge Blalock, are a number of water control and improvement districts, navigation districts, the City of Laredo, a number of citizens of Webb, Zapata, Starr, Hidalgo, and Cameron Counties, and also the Board of Water Engineers of the State of Texas.

It is made to appear by the statement of Judge Blalock that he is the owner of a home in the city of Mission, consisting of four lots and a twenty-foot strip of land lying between two of the lots; that he has resided on said property as a home since three of the lots were acquired by him in 1939; and that his property also lies within one of the porciones which abut on the Rio Grande, his home being situated some three miles from the Rio Grande. Judge Blalock purchases water from Hidalgo County Water Control and Improvement District No. 14 for irrigating his lawn and certain citrus trees on the property, which trees serve the dual purpose of shade trees and trees which produce fruit, principally for family use. For that service he pays the District $5.00 each time he uses its water. He has installed an underground pipe line system to transport water directly from the District's canal to his property. His home is connected with the water system of the City of Mission and water for household purposes is supplied by the City. When water is not available in the District's canal to irrigate his lawn, he purchases water from the City of Mission to irrigate it. He considers the system which he has installed for irrigating with water purchased directly from the District to be more convenient, economical, and efficient than irrigating with water purchased from the City.

Judge Blalock's commendable attitude in the case is reflected by his reply to the Application for Mandamus, from which we quote:

"I have no desire to evade the trial of the above entitled and numbered cause if I am not disqualified to try such case. However, in view of the magnitude of the expenditure of both labor and money required to try such case, I felt that I should decline to try the same if I had any doubt as to my qualifications to try the case. As set forth in the certificate, I am furnished water for irrigation of my city property by Hidalgo County Water Control and Improvement District No. 14, and I am of the opinion that a benefit will be derived by me if it should be determined that the water district from whom I purchase water has a prior right to water over other water districts and users who are parties to this case; similarly, a detriment will be suffered by me if it should be determined that Water District No. 14 is not entitled to a priority to the use of water over other water districts in this case. Such question of priority of such district is an issue in this case, and will have to be decided."

At the hearing in which Judge Blalock announced his disqualification he made the following statement:

"I am aware of the fact that the decision of the question of my qualification or disqualification to try this case will have far-reaching consequences. In the first place, experience has shown us that it is next to impossible to find a judge residing in another section of the State who can come here and try this case. Most of you are entirely familiar with all of the reasons why this is true, so I think it is not necessary for me to enumerate them at this time. But this is a case that ought to be tried and disposed of as soon as possible. It is a matter of common knowledge that the very economy of the great and populous area involved in this suit is dependent upon the waters of the Rio Grande River for its very existence. It is also a matter of common knowledge that controversy exists between the various users of the water of the Rio Grande River as to their respective rights to such water, and they are serious and material. They affect the values to be placed upon thousands of acres of fertile soil, and they affect the future planning of a great population. The record already made in this case reflects that the issues about which there are controversies are both numerous and complicated. The files which the Clerk of this Court has already accumulated in this case are more voluminous than in any other case of which I have personal knowledge. When I have questioned counsel in this case about the time which would probably be required to try and dispose of the case, estimates have ranged from a period of several months to a period

of years. There are a great number of parties and attorneys before the Court. Large sums of money have already been incurred as costs, and I have heard some of you estimate that the costs of this case may eventually run into hundreds of thousands of dollars. These things being true, it would be tragic indeed if, after such a great expenditure of time and money by so great a number of people, it should be determined by a Court of last resort that the Judge who presided at the trial of the case was disqualified for reasons known at the time the trial began."

The State Board of Water Engineers, one of the respondents, has filed in this court, through the Attorney General, a memorandum brief, the purpose of which is not to object to the trial of this case by Judge Blalock, but to call attention to the gravity of the mistake which would be made if, after having tried the case, it should later be determined that he was disqualified. It is pointed out that the judgment which will be entered in this case will adjudicate all rights to the share of the United States in the waters from the Rio Grande from its confluence with the Pecos River at one extreme to its mouth at Brownsville at the other. The memorandum makes known that the State is intensely interested in insuring that the efforts expended in the trial of this case shall not have been in vain, and that the judgment rendered herein will not be subject to attack on the question of the Judge's disqualification. The memorandum then presents the question of whether the defendants fairly represent all classes which may be affected by the judgment. The contention is not urged that there is such a defect of parties as to deprive the court of jurisdiction, but calls our attention to the possibility that this situation may develop.

■ The first question for decision, then, is whether the relators and respondents fairly represent all classes claiming rights in and to the water of the Rio Grande. A class action is applicable to mandamus proceedings the same as to other proceedings. Houston v. Allred, 123 Texas 334, 71 S.W. 2d 251. But in order to bind all parties, representatives of all classes must be joined in the proceeding. Relators allege that there are presently in excess of 725 parties to this litigation, and that in all probability, before same is ready for trial on its merits, there will be in excess of 1500 parties asserting every conceivable claim recognized by law to divert and use the share of the United States in the waters of the Rio Grande stored in Falcon Reservoir. Notwithstanding all the possible controversies

which may arise, the relators' petition avers, under oath, that the relators and respondents named therein fairly represent all classes of claimants of all of the various and divergent rights to divert and use the share of the United States in the waters below the confluence of the Pecos River with the Rio Grande. That allegation is not denied, and we accept it as true. We face a condition unique in the history of our jurisprudence. Relators are entitled to have their rights litigated. It is next to impossible to find a judge residing in another section of the State who could be transferred to Hidalgo County to try this case. With that condition obtaining, mandamus should not be denied on the fear that it may later develop that some class of litigants is not fairly represented. We therefore are constrained to hold that there is not a defect of parties to this suit which would deprive the court of jurisdiction.

■ This brings us to a consideration of Judge Blalock's disqualification. It is a well-settled rule that as a citizen of Mission and a patron of its water system his interest is in common with that of the public, and is therefore not one that disqualifies him from sitting in this case. Without citing many authorities establishing that principle, we refer to 25 Texas Jurisprudence, Section 38, page 279, where many cases supporting same are cited in the footnotes. We see no reason why the same rule should not apply to him as a purchaser of water from the District. Besides, it is not shown that any pecuniary gain or loss would result to Judge Blalock directly upon the event of the suit. If his interest in the question is indirect, uncertain, or remote, and the result of the suit will not necessarily subject him to a personal gain or loss, he is not disqualified to sit in the case. Love v. Wilcox, 119 Texas 256, 28 S.W. 2d 515; 70 A.L.R. 1484; City of Oak Cliff v. State, ex rel Gill, 97 Texas 391, 79 S.W. 1068. Judge Blalock is not a party to the main suit, and any judgment which may be rendered therein for or against the District from which he purchases water would affect him only indirectly. Furthermore, his statement reflects that he can procure water for irrigating his lawn and trees from the City of Mission. Then, too, he might purchase it from some other district. It therefore appears that it is highly conjectural whether he would be deprived of any water for irrigation purposes by any judgment which may be rendered in this case.

The most serious question for decision is raised by the fact that Judge Blalock's home is located in an original porcion which abutted on the Rio Grande at the time the grant was

made by the Crown of Spain. One of the issues to be determined in the cause concerns the existence, nature, and extent of riparian rights to the riparian flow of the Rio Grande. It may become an issue in this case as to whether all lands within those grants carry riparian rights to irrigate, even though they have been subdivided into numerous small tracts. Stated differently, it is suggested that it will be decided in this case whether Judge Blalock has an individual, personal right to set up a system of his own whereby he can pump water from the river three miles away for irrigation purposes. There is, of course, no suggestion that he would resort to that device in the event it should be held that he has such right. Particularly is this true since, under his statement, he may procure irrigation water from the City of Mission or, as observed above, he might purchase water from some other district. Our view is that the possibility of any direct injury to Judge Blalock on account of his being deprived of the right to set up an irrigation system of his own is too highly remote and speculative to disqualify him to sit in the case.

Our conclusion is that Judge Blalock is not under a legal disqualification to try the main case to which this proceeding is ancillary. Doubtless he will be guided by this opinion and therefore no necessity exists for issuing a writ of mandamus. Accordingly same will be issued only in the event it becomes necessary to give effect to this opinion.

Writ of mandamus granted conditionally.

Associate Justice Norvell not sitting.

Opinion delivered April 17, 1957.