COURT OF APPEALS

EIGHTH DISTRICT OF TEXAS

EL PASO, TEXAS



EMILY GRACE SCOWN,


 Appellant,


v.


THE CITY OF ALPINE, TEXAS,


 Appellee.
§


 


§


 


§


 


§


 


§


 


 § 


No. 08-07-00012-CV



Appeal from the


394th District Court


of Brewster County, Texas


(TC#2002-06-B7849-CV)


O P I N I O N


 Appellant, Emily Grace Scown, challenges the trial court's partial summary judgment in
favor of Appellee, The City of Alpine, Texas, and its denial of her motion for partial summary
judgment. We affirm the judgment of the trial court.

I. BACKGROUND


 This case involves an easement granted in 1972 by Dr. Charles Livingston to the City (the
"Livingston Agreement") that allowed the City to construct and maintain a water pipeline on his real
property located in Brewster County (the "Livingston Property"). The easement grants the City a
15-foot wide easement "for the purposes of laying, maintaining, repairing and replacing, when
necessary" a water pipeline to transport water to the City's water distribution facilities located within
Alpine. In exchange, the City agreed "to furnish water to the property of Grantors beneficiaries, their
heirs and assigns . . . at rates not in excess of those paid by residents of The City of Alpine at any
given time; taps and connections to such City of Alpine water service to be at the expense of those
eligible under this agreement to so connect at such rates . . . ." The City acknowledged the easement
by a resolution dated November 29, 1972.

 Scown, an apparent assignee of Dr. Livingston, subsequently sought to subdivide the property
for a residential housing development known as "Desert Spring Subdivision." On June 14, 2002,
Scown filed her Original Petition, alleging that she presented the City with a proposed agreement
entitled "Water Service Agreement Desert Spring Subdivision, Brewster County, Texas," and
requested that the City approve it. Scown pleaded that the City considered the proposed agreement
and rejected it at a June 10, 2002, city council meeting. Scown alleged that, by doing so, the City
violated the terms of the Livingston Agreement. Scown pleaded as damages the cost of platting the
subdivision, the interest owed on money borrowed to pay for the platting of the subdivision, and lost
revenue and lost profits. Scown alleged that these damages amounted to $500,000. Scown also
sought recovery under a detrimental-reliance theory. In addition, Scown sought a declaratory
judgment that the City was obligated to provide water, at rates paid by residents of Alpine, to the
individuals occupying the Livingston Property, with connections to the water to be at Scown's
expense. Scown also sought specific performance and attorney's fees in the amount of $40,000.

 The proposed water service agreement, attached as an exhibit to Scown's Original Petition,
provided:

 The Subdivider plans to construct for the Subdivision a drinking water distribution
system to be connected to the Utility's public water system. The Utility has reviewed
the plans for the Subdivision . . . and has estimated the drinking water flow
anticipated to be needed by the Subdivision under fully built-out conditions (the
anticipated water flow) to be approximately 8,000 gallons daily. 


 The Utility covenants that is has or will have the ability to provide the
anticipated water flow for at least thirty years, and that it will provide that water flow. 
These covenants will be in effect until thirty years after the plat of the Subdivision
has been recorded and the Subdivision's water distribution system has been
connected to the Utility's water supply system.


 The proposed agreement further provided that Scown would pay the Utility the "costs of
water meters, water rights acquisition fees, and all membership or other fees associated with
connecting the individual lots in the Subdivision to the Utility's water supply system as installed." 
The proposed agreement also recited that it did not supercede the Livingston Agreement, but the
water provided under the agreement was pursuant to Scown's rights under the easement.

 The City answered with a general denial and subsequently amended its original answer to
assert that Scown had failed to give written notice to the city manager or city secretary within six
months of the date of the alleged injury or damage, as required by the city charter, and that it was
immune from liability. Approximately two and one-half years after filing suit, Scown moved to
recuse Judge Kenneth DeHart on various grounds. The motion was denied.

 Both Scown and the City moved for partial summary judgment. The trial court granted the
City's motion and denied Scown's. Following the grant of partial summary judgment, the City non-suited its counterclaim against Scown. Scown argues on appeal that its motion to recuse the trial
judge was improperly denied and that the trial court erred in granting partial summary judgment on
each of the grounds contained in the order.

II. DISCUSSION


A. Motion to Recuse


 Scown appeals the denial of her motion to recuse trial judge Kenneth DeHart. If a motion
to recuse is denied, the denial may be reviewed on appeal from the final judgment. In re Lutz, 164
S.W.3d 721, 723 (Tex. App.--El Paso 2005, no pet.); Tex. R. Civ. P. 18a(f). The standard of review
for the denial of a motion to recuse is abuse of discretion. Chandler v. Chandler, 991 S.W.2d 367,
385 (Tex. App.--El Paso 1999, pet. denied), cert. denied, 529 U.S. 1054 (2000); Tex. R. Civ. P.
18a(f). The Rules of Civil Procedure provide that a judge shall recuse himself if, inter alia, his
impartiality might be reasonably questioned; he has a personal bias or prejudice concerning the
subject matter or a party, or personal knowledge of disputed evidentiary facts concerning the
proceeding; he participated as counsel, adviser, or material witness in the matter in controversy, or
expressed an opinion concerning the merits of it while acting as an attorney in government service;
or he has a financial interest in the matter in controversy. Tex. R. Civ. P. 18b(2).

 "In reviewing the denial of a recusal motion, we apply a reasonable person standard in
determining whether the alleged act or acts indicating bias or impartiality emanated from an
extrajudicial source." Trahan v. Lone Star Title Co., 247 S.W.3d 269, 274 (Tex. App.--El Paso
2007, pet. denied).

 Scown's motion to recuse was heard by Judge Peter Peca. Scown's arguments in favor of
recusal were that: (1) Judge DeHart had a financial interest in the outcome of the case, because he
was a taxpayer and consumer of water services offered by the City; (2) he was pictured in the
newspaper at the dedication ceremony of a U.S. Border Patrol station located outside Alpine that was
to receive water service from the City; and (3) he was formerly a city attorney for the City. Scown
argues in her brief that she "does not allege that any of these acts would cause any direct impartiality
by Judge DeHart, but merely an appearance of impartiality certainly existed" (emphases in original). 
At the hearing, Scown presented evidence that Judge DeHart owned property in Alpine and that he
had been pictured in the Alpine newspaper at the U.S. Border Patrol station dedication ceremony.

 Karen Philippi, then Alpine's city manager, testified in January 2005, that the city council
had to adopt a 44 percent tax increase for the coming year due to the City's financial problems. 
According to Philippi, the City did not have the funds to improve water infrastructure. The City did
not have any reserve funds set aside to pay a judgment, and, if Scown were to obtain a verdict in the
$300,000 to $500,000 range, the City would have to curtail services or raise various fees. With
regard to the Border Patrol station, Philippi testified that the station is located outside the city limits
and that the City provided water to the station, even though it was not contractually obligated to do
so. The Border Patrol paid for the construction of water and sewer lines to its station, and it pays
more than the in-city rate for water service. Betty Jo Rooney, the City's tax collector and appraiser,
testified that Judge DeHart owned one piece of property in Alpine and that the 44 percent tax
increase would result in an additional $370 in property taxes on the property. Margie Brooks, a long-time employee of Judge DeHart, also testified that he had formerly worked as a city attorney for the
City.

 It has been held that, for the purposes of disqualification, the fact that a judge is a taxpayer
or has some interest in common with many others is not sufficient by itself to justify disqualification. 
Hidalgo County Water Improvement Dist. No. 2 v. Blalock, 157 Tex. 206, 211, 301 S.W.2d 593, 596
(1957) (fact that judge was a citizen and patron of the city's water system did not warrant
disqualification); Elliott v. Scott, 119 Tex. 94, 98, 25 S.W.2d 150, 151 (1930) ("an interest which
a judge has in common with many others in a public matter is not sufficient to disqualify him");
Nueces County Drainage & Conservation Dist. No. 2 v. Bevly, 519 S.W.2d 938, 951 (Tex. Civ.
App.--Corpus Christi 1975, writ ref'd n.r.e.) ("Where a judge's pecuniary interest is not specially
affected, a judge is not by reason of being a taxpayer disqualified from sitting in a case although he
may have a merely incidental, remote, contigent [sic] or possible pecuniary interest in the subject
matter of the suit."). The mere fact that Judge DeHart owned a piece of property in Alpine is not
sufficient to require his recusal.

 With regard to the fact that Judge DeHart formerly served as Alpine's City Attorney, Scown
did not present any evidence that such representation was in any way related to the matter in
controversy. See Tex. R. Civ. P. 18b(2)(d). Finally, the fact that Judge DeHart was present, along
with numerous other city, county, and federal officials, at the dedication of a U.S. Border Patrol
station, which also happened to have entered into an agreement with the City for the provision of
water, does not provide a reasonable basis to question Judge DeHart's impartiality. Judge Peca did
not abuse his discretion in denying Scown's motion to recuse Judge DeHart. We overrule this issue.

B. The Livingston Agreement


1. Standard of Review


 We review a summary judgment de novo. Valence Operating Co. v. Dorsett, 164 S.W.3d
656, 661 (Tex. 2005). The standard of review for a traditional summary judgment asks whether the
movant carried the burden of showing that there is no genuine issue of material fact, so that judgment
should be granted as a matter of law. Diversicare Gen. Partner, Inc. v. Rubio, 185 S.W.3d 842, 846
(Tex. 2005); De Santiago v. West Tex. Cmty. Supervision & Corr. Dep't, 203 S.W.3d 387, 398 (Tex.
App.--El Paso 2006, no pet.). Summary judgment is proper, if the defendant disproves at least one
element of each of the plaintiff's causes of action, D. Houston, Inc. v. Love, 92 S.W.3d 450, 454
(Tex. 2002), or establishes all elements of an affirmative defense to each claim, Shah v. Moss, 67
S.W.3d 836, 842 (Tex. 2001). Once the movant establishes a right to judgment as a matter of law,
the burden shifts to the non-movant to produce evidence raising a genuine issue of material fact. 
City of Houston v. Clear Creek Basin Auth., 589 S.W.2d 671, 678-79 (Tex. 1979). When reviewing
a summary judgment, we take as true all competent evidence favorable to the non-movant, and we
indulge every reasonable inference and resolve any doubts in the non-movant's favor. Southwestern
Elec. Power Co. v. Grant, 73 S.W.3d 211, 215 (Tex. 2002) (citing Science Spectrum, Inc. v.
Martinez, 941 S.W.2d 910, 911 (Tex. 1997)). "When both sides move for summary judgment and
the trial court grants one motion and denies the other, the reviewing court should review both sides'
summary judgment evidence and determine all questions presented." FM Props. Operating Co. v.
City of Austin, 22 S.W.3d 868, 872 (Tex. 2000); WB Summit Props., Inc. v. Midland Cent. Appraisal
Dist., 122 S.W.3d 374, 375 (Tex. App.--El Paso 2003, pet. denied). The reviewing court is to render
the judgment that the trial court should have rendered. FM Props., 22 S.W.3d at 872; WB Summit,
122 S.W.3d at 375.

2. The City's Motions for Partial Summary Judgment


 On April 23, 2003, the City filed its first motion for partial summary judgment. In it, the City
argued that it was immune from liability, because Scown failed to comply with the notice of claim
provision contained in the City's charter. The City attached the notice provision along with the
affidavits of the city manager and city secretary, each of whom stated that no written, verified notice
of the claim had been received from Scown. The trial court denied the motion.

 The City filed a second motion for partial summary judgment on March 31, 2006. There, the
City first argued that the Livingston Agreement violates the Texas constitutional provision that "no
debt shall ever be created by any city, unless at the same time provision be made to assess and collect
annually a sufficient sum to pay the interest thereon and creating a sinking fund of at least two per
cent. thereon." Tex. Const. art. XI, § 5. (1) The City contended that, according to Scown's
interpretation of the Livingston Agreement, the City would be required to provide taps and
connections to the City's water line, be responsible for all infrastructure, and be required to develop
the water system sufficiently to ensure water delivery to the additional out-of-city residents who
would live in the proposed Desert Spring Subdivision. According to the City, the Livingston
Agreement was not supported by current revenue in 1972, and no sinking fund, interest fund, or other
mechanism of payment had been set aside for the costs associated with it.

 The City also argued that partial summary judgment was warranted, because the regulation
of water and the decision as to whether to extend water services outside the corporate limits are
legislative functions, and that the installation of forty additional water taps would impair the City's
governmental power by forcing it to exercise an authority detrimental to the benefit of Alpine's
citizens. As evidence, the City cited an Alpine City Council resolution limiting the expansion of city
services beyond the city limits.

 The City further argued that the Livingston Agreement was terminable at will. The City cited
the reversionary language contained in the Livingston Agreement and requested a declaratory
judgment that it had the right to abandon the pipeline located on the Scown (formerly, Livingston)
property, build a new pipeline on Texas Department of Transportation right-of-way, and convey the
easement back to Scown. The City also argued that the Livingston Agreement was terminable at
will, because it was indefinite in time.

 The City attached to its motion an affidavit of Chuy Garcia, Alpine's city manager in 2006,
who stated that, in that capacity, he was familiar with the City's water distribution system. Garcia
stated that the City received a request from Scown for forty new water taps to provide water to a
proposed subdivision outside the city limits. Garcia referenced an engineering study attached to the
Affidavit of Jose R. Rodriguez, the City's Consulting Engineer, which is, in turn, attached to the
City's motion. Garcia stated that, based on the study, the additional demand equivalent to forty
residential customers to the existing water line would result in a water pressure of approximately 24
psi, which is below the minimum required pressure pursuant to the Texas Commission on
Environmental Quality's ("TCEQ") requirement of 35 psi. Garcia also stated that the City has water
pressure problems within the City, which it is in the process of improving, and that the City does not
have sufficient money to make such improvements and also improve water service and delivery to
the Scown subdivision.

 In his affidavit, Rodriguez stated that he is a licensed engineer in the State of Texas; that he
was Project Engineer for Naismith Engineering, Inc.; and that he has fourteen years of experience
as engineer related to utility and public works improvement projects, including municipal water
distribution systems. Rodriguez stated that he was familiar with the City's water distribution system
and that he had evaluated the City's ability to provide water service for Scown's forty new taps. 
Through the use of a computer model, Rodriguez determined that the addition of the forty taps would
result in a water pressure of approximately 24 psi, below the TCEQ required minimum pressure of
35 psi. Rodriguez also stated that, with certain improvements, entitled "Priority 1 Improvements,"
the water pressure could be brought up to 60 psi. Attached as an exhibit to Rodriguez's affidavit is
a graph showing the water pressure with and without such improvements. Rodriguez attaches an
estimate of the cost of such improvements, which places the cost at $4,860,000. Rodriguez states
that the City cannot provide forty additional taps to the Scown property until the Priority 1
Improvements are made, because the City would be in violation of TCEQ water pressure regulations. 
Rodriguez further stated that the City and Naismith Engineering were then working on a project to
remove the water line that crosses the Scown property, relocate it to a Texas Department of
Transportation right-of-way, and deed the easement back to the Scown property. Rodriguez attached
an exhibit estimating the cost for such project at $43,578.79.

 On June 19, 2006, the trial court held a hearing on the City's motion for partial summary
judgment, as well as that of Scown. Shortly thereafter, the City requested reconsideration of its first
motion for partial summary judgment, based on its immunity defense, in light of the Supreme
Court's decision in Tooke v. City of Mexia, 197 S.W.3d 325 (Tex. 2006), which was rendered on
June 30, 2006.

 The trial court granted the City's motion and denied Scown's. The trial court's order
granting judgment in favor of the City recites that it found (1) that the Livingston Agreement is void,
because it violates article XI, section 7 of the Texas Constitution; (2) (2) that the Livingston Agreement
impermissibly divests the City of its legislative function of regulating the provision of water; (3) that
the Livingston Agreement is terminable at will and therefore of no further force and effect, should
the City cancel it; and (4) that the City did "not waive its immunity from suit by reason of inclusion
of the phrase 'sue or be sued' in its City Charter."

 The trial court's entry of summary judgment declared, in part, that "as a matter of law, there
is a reversionary clause granting Defendant, The City of Alpine, the option to abandon the easement,
and to terminate any alleged duties under the contract." The Livingston Agreement provides:

 Such easement shall be in perpetuity so long as Grantee uses the same for the
purposes herein stipulated, and no other, and reversionary rights to the said easement
shall be to Grantors herein, or to their heirs, administrators or assigns should the
Grantee abandon or move said pipeline or otherwise cease to use the easement here
granted for the purposes herein stated for a period of more than Three (3) years,
unless sooner affirmatively abandoned after non-use by the Grantee. In either event,
the Grantee shall have Twelve (12) months thereafter to remove all pipe, pumps,
boosters and other water transmission equipment from such easement and to repair
and replace such easement in the condition the same now is.


Scown argues that the trial court's ruling is, in reality, a rescission of the Livingston Agreement. 
However, the Livingston Agreement expressly permits the City to abandon the easement. See
Kearney & Son v. Fancher, 401 S.W.2d 897, 906 (Tex. Civ. App.--Fort Worth 1966, writ ref'd
n.r.e.) (an easement granted for particular purpose terminates as soon as such purpose ceases to exist
or is abandoned).

 The Livingston Agreement does not require the City to continue to provide water service to
Scown in the event the City abandons the easement. See City of Livingston v. Wilson, 310 S.W.2d
569 (Tex. Civ. App.--Beaumont 1958, writ ref'd n.r.e.) (absent an enforceable contract to supply
water to nonresidents, city was under no obligation to do so); Cox v. City of Comanche, No. 11-97-00218-CV, 1998 WL 34193997, at *3 (Tex. App.--Eastland Nov. 12, 1998, no pet.) (not designated
for publication) (city had right to abandon potentially contaminated waterline because warranty deed
under which grantor claimed right to water did not require the city to maintain the line). Because
the Livingston Agreement is terminable at will, we overrule this issue and affirm summary judgment
on this ground. We therefore find it unnecessary to consider the other grounds relied upon by the
trial court.

3. Scown's Motion for Partial Summary Judgment


 Scown contends that the trial court erred by denying her motion for partial summary
judgment. In her motion, Scown argued that there was no evidence "that the subject Contract is
anything but a binding, valid and enforceable Contract requiring the City to provide water to Movant
or her assigns as the legal beneficiaries to the subject Contract." (3) Scown argued that the City had
"in essence breached the Contract with Movant by reason of their [sic] failure and unwillingness to
provide water to portions of Movant's Property and to certify to Brewster County that the City will
provide 8800 gallons per day for thirty (30) years to Movant's Property." Scown also asserted that
the City breached the Livingston Agreement by allowing other entities access to the water line,
"knowing it could potentially adversely affect future services to Movant's Property" and that "the
City knew or should have known it was contractually obligated to Movant and her heirs and assigns,
to provide water to the Property upon demand. The City's defense of alleged inadequate water
pressure, or inadequate supply, if any, is the responsibility of the City to correct . . . ." According
to Scown, the Livingston Agreement obligated the City to make any necessary improvements to
provide the amount of water demanded by Scown.

 Scown does not cite any authority for her position, but rather relies on the language of the
Livingston Agreement, deposition excerpts, and other testimony. Scown cited portions of the
deposition testimony of Karen Philippi, the former city manager, in an attempt to establish that the
City was obligated to provide Scown with the water she requests. Scown cites to a portion of
Philippi's deposition in which Philippi stated that she was not aware of language in the Livingston
Agreement to the effect that the City did not have to continue to provide water, if it abandoned the
easement. Scown's evidence showed that the City was providing water to other recipients outside
of the City limits to whom it was not contractually obligated. For instance, Philippi testified that the
City was providing water to a Department of Public Safety office and to a DEA office located
outside the city limits and that she was unaware of a contract with either entity requiring the City to
do so. Scown also presented some evidence to attack the reliability of the study commissioned by
the City regarding the water pressure in the water line running on the easement and the effect of the
additional taps demanded by Scown on the water pressure. However, the language of the Livingston
Agreement simply does not support Scown's arguments that the City breached the Agreement by not
agreeing in writing to provide 8800 gallons of water per day to Scown's property at city resident
rates or by providing water to other entities located outside the City. As discussed above, the City
is free to abandon the easement and terminate the Livingston Agreement. Scown's summary
judgment evidence fails to overcome the plain language of the Livingston Agreement. We overrule
this issue.

III. CONCLUSION


 We affirm the judgment of the trial court on the ground that the Livingston Agreement was
terminable at will by the City. Because we uphold the trial court's judgment on this ground, we do
not address Appellant's remaining issues.



 KENNETH R. CARR, Justice


November 13, 2008


Before Chew, C.J., McClure, and Carr, JJ.

1. Cited in the City's motion as article II, section 5.
2. Article XI, section 7, which is largely analogous to section 5 (the constitutional provision relied upon by the
City in its motion), provides, in relevant part:


 [N]o debt for any purpose shall ever be incurred in any manner by any city or county unless provision
is made, at the time of creating the same, for levying and collecting a sufficient tax to pay the interest
thereon and provide at least two per cent (2%) as a sinking fund . . . .


Tex. Const. art. XI, § 7. The two provisions are often cited and considered together. See, e.g., City of Houston v.
United Compost Servs., Inc., 477 S.W.2d 349, 356 (Tex. Civ. App.--Houston [1st Dist.] 1972, writ ref'd n.r.e.). In view
of our resolution of the underlying controversy, we need not consider the interplay of the two sections.
3. Although Scown filed a no-evidence motion for partial summary judgment, she attached several exhibits to
the motion.