COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | | |
|---|---|---|
| EMILY GRACE SCOWN, | § | No. 08-07-00012-CV |
| Appellant, | § | Appeal from the |
| v. | § | 394th District Court |
| THE CITY OF ALPINE, TEXAS, | § | of Brewster County, Texas |
| Appellee. | § | (TC#2002-06-B7849-CV) |
| | § | |

**O P I N I O N**

Appellant, Emily Grace Scown, challenges the trial court's partial summary judgment in favor of Appellee, The City of Alpine, Texas, and its denial of her motion for partial summary judgment. We affirm the judgment of the trial court.

**I. BACKGROUND**

This case involves an easement granted in 1972 by Dr. Charles Livingston to the City (the "Livingston Agreement") that allowed the City to construct and maintain a water pipeline on his real property located in Brewster County (the "Livingston Property"). The easement grants the City a 15-foot wide easement "for the purposes of laying, maintaining, repairing and replacing, when necessary" a water pipeline to transport water to the City's water distribution facilities located within Alpine. In exchange, the City agreed "to furnish water to the property of Grantors beneficiaries, their heirs and assigns . . . at rates not in excess of those paid by residents of The City of Alpine at any given time; taps and connections to such City of Alpine water service to be at the expense of those eligible under this agreement to so connect at such rates . . . ." The City acknowledged the easement by a resolution dated November 29, 1972.

Scown, an apparent assignee of Dr. Livingston, subsequently sought to subdivide the property for a residential housing development known as "Desert Spring Subdivision." On June 14, 2002, Scown filed her Original Petition, alleging that she presented the City with a proposed agreement entitled "Water Service Agreement Desert Spring Subdivision, Brewster County, Texas," and requested that the City approve it. Scown pleaded that the City considered the proposed agreement and rejected it at a June 10, 2002, city council meeting. Scown alleged that, by doing so, the City violated the terms of the Livingston Agreement. Scown pleaded as damages the cost of platting the subdivision, the interest owed on money borrowed to pay for the platting of the subdivision, and lost revenue and lost profits. Scown alleged that these damages amounted to $500,000. Scown also sought recovery under a detrimental-reliance theory. In addition, Scown sought a declaratory judgment that the City was obligated to provide water, at rates paid by residents of Alpine, to the individuals occupying the Livingston Property, with connections to the water to be at Scown's expense. Scown also sought specific performance and attorney's fees in the amount of $40,000.

The proposed water service agreement, attached as an exhibit to Scown's Original Petition, provided:

> The Subdivider plans to construct for the Subdivision a drinking water distribution system to be connected to the Utility's public water system. The Utility has reviewed the plans for the Subdivision . . . and has estimated the drinking water flow anticipated to be needed by the Subdivision under fully built-out conditions (the anticipated water flow) to be approximately 8,000 gallons daily.
>
> The Utility covenants that is has or will have the ability to provide the anticipated water flow for at least thirty years, and that it will provide that water flow. These covenants will be in effect until thirty years after the plat of the Subdivision has been recorded and the Subdivision's water distribution system has been connected to the Utility's water supply system.

The proposed agreement further provided that Scown would pay the Utility the "costs of water meters, water rights acquisition fees, and all membership or other fees associated with

connecting the individual lots in the Subdivision to the Utility's water supply system as installed." The proposed agreement also recited that it did not supercede the Livingston Agreement, but the water provided under the agreement was pursuant to Scown's rights under the easement.

The City answered with a general denial and subsequently amended its original answer to assert that Scown had failed to give written notice to the city manager or city secretary within six months of the date of the alleged injury or damage, as required by the city charter, and that it was immune from liability. Approximately two and one-half years after filing suit, Scown moved to recuse Judge Kenneth DeHart on various grounds. The motion was denied.

Both Scown and the City moved for partial summary judgment. The trial court granted the City's motion and denied Scown's. Following the grant of partial summary judgment, the City non-suited its counterclaim against Scown. Scown argues on appeal that its motion to recuse the trial judge was improperly denied and that the trial court erred in granting partial summary judgment on each of the grounds contained in the order.

## II. DISCUSSION

### A. Motion to Recuse

Scown appeals the denial of her motion to recuse trial judge Kenneth DeHart. If a motion to recuse is denied, the denial may be reviewed on appeal from the final judgment. *In re Lutz*, 164 S.W.3d 721, 723 (Tex. App.--El Paso 2005, no pet.); TEX. R. CIV. P. 18a(f). The standard of review for the denial of a motion to recuse is abuse of discretion. *Chandler v. Chandler*, 991 S.W.2d 367, 385 (Tex. App.--El Paso 1999, pet. denied), *cert. denied*, 529 U.S. 1054 (2000); TEX. R. CIV. P. 18a(f). The Rules of Civil Procedure provide that a judge shall recuse himself if, inter alia, his impartiality might be reasonably questioned; he has a personal bias or prejudice concerning the subject matter or a party, or personal knowledge of disputed evidentiary facts concerning the

proceeding; he participated as counsel, adviser, or material witness in the matter in controversy, or expressed an opinion concerning the merits of it while acting as an attorney in government service; or he has a financial interest in the matter in controversy. TEX. R. CIV. P. 18b(2).

"In reviewing the denial of a recusal motion, we apply a reasonable person standard in determining whether the alleged act or acts indicating bias or impartiality emanated from an extrajudicial source." *Trahan v. Lone Star Title Co.*, 247 S.W.3d 269, 274 (Tex. App.--El Paso 2007, pet. denied).

Scown's motion to recuse was heard by Judge Peter Peca. Scown's arguments in favor of recusal were that: (1) Judge DeHart had a financial interest in the outcome of the case, because he was a taxpayer and consumer of water services offered by the City; (2) he was pictured in the newspaper at the dedication ceremony of a U.S. Border Patrol station located outside Alpine that was to receive water service from the City; and (3) he was formerly a city attorney for the City. Scown argues in her brief that she "does not allege that any of these acts <u>would</u> cause any direct impartiality by Judge DeHart, but merely an <u>appearance of impartiality</u> certainly existed" (emphases in original). At the hearing, Scown presented evidence that Judge DeHart owned property in Alpine and that he had been pictured in the Alpine newspaper at the U.S. Border Patrol station dedication ceremony.

Karen Philippi, then Alpine's city manager, testified in January 2005, that the city council had to adopt a 44 percent tax increase for the coming year due to the City's financial problems. According to Philippi, the City did not have the funds to improve water infrastructure. The City did not have any reserve funds set aside to pay a judgment, and, if Scown were to obtain a verdict in the $300,000 to $500,000 range, the City would have to curtail services or raise various fees. With regard to the Border Patrol station, Philippi testified that the station is located outside the city limits and that the City provided water to the station, even though it was not contractually obligated to do

so. The Border Patrol paid for the construction of water and sewer lines to its station, and it pays more than the in-city rate for water service. Betty Jo Rooney, the City's tax collector and appraiser, testified that Judge DeHart owned one piece of property in Alpine and that the 44 percent tax increase would result in an additional $370 in property taxes on the property. Margie Brooks, a long-time employee of Judge DeHart, also testified that he had formerly worked as a city attorney for the City.

It has been held that, for the purposes of disqualification, the fact that a judge is a taxpayer or has some interest in common with many others is not sufficient by itself to justify disqualification. *Hidalgo County Water Improvement Dist. No. 2 v. Blalock*, 157 Tex. 206, 211, 301 S.W.2d 593, 596 (1957) (fact that judge was a citizen and patron of the city's water system did not warrant disqualification); *Elliott v. Scott*, 119 Tex. 94, 98, 25 S.W.2d 150, 151 (1930) ("an interest which a judge has in common with many others in a public matter is not sufficient to disqualify him"); *Nueces County Drainage & Conservation Dist. No. 2 v. Bevly*, 519 S.W.2d 938, 951 (Tex. Civ. App.--Corpus Christi 1975, writ ref'd n.r.e.) ("Where a judge's pecuniary interest is not specially affected, a judge is not by reason of being a taxpayer disqualified from sitting in a case although he may have a merely incidental, remote, contigent [sic] or possible pecuniary interest in the subject matter of the suit."). The mere fact that Judge DeHart owned a piece of property in Alpine is not sufficient to require his recusal.

With regard to the fact that Judge DeHart formerly served as Alpine's City Attorney, Scown did not present any evidence that such representation was in any way related to the matter in controversy. *See* TEX. R. CIV. P. 18b(2)(d). Finally, the fact that Judge DeHart was present, along with numerous other city, county, and federal officials, at the dedication of a U.S. Border Patrol station, which also happened to have entered into an agreement with the City for the provision of

water, does not provide a reasonable basis to question Judge DeHart's impartiality. Judge Peca did not abuse his discretion in denying Scown's motion to recuse Judge DeHart. We overrule this issue.

## B. The Livingston Agreement

### 1. Standard of Review

We review a summary judgment *de novo*. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005). The standard of review for a traditional summary judgment asks whether the movant carried the burden of showing that there is no genuine issue of material fact, so that judgment should be granted as a matter of law. *Diversicare Gen. Partner, Inc. v. Rubio*, 185 S.W.3d 842, 846 (Tex. 2005); *De Santiago v. West Tex. Cmty. Supervision & Corr. Dep't*, 203 S.W.3d 387, 398 (Tex. App.--El Paso 2006, no pet.). Summary judgment is proper, if the defendant disproves at least one element of each of the plaintiff's causes of action, *D. Houston, Inc. v. Love*, 92 S.W.3d 450, 454 (Tex. 2002), or establishes all elements of an affirmative defense to each claim, *Shah v. Moss*, 67 S.W.3d 836, 842 (Tex. 2001). Once the movant establishes a right to judgment as a matter of law, the burden shifts to the non-movant to produce evidence raising a genuine issue of material fact. *City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678-79 (Tex. 1979). When reviewing a summary judgment, we take as true all competent evidence favorable to the non-movant, and we indulge every reasonable inference and resolve any doubts in the non-movant's favor. *Southwestern Elec. Power Co. v. Grant*, 73 S.W.3d 211, 215 (Tex. 2002) (citing *Science Spectrum, Inc. v. Martinez*, 941 S.W.2d 910, 911 (Tex. 1997)). "When both sides move for summary judgment and the trial court grants one motion and denies the other, the reviewing court should review both sides' summary judgment evidence and determine all questions presented." *FM Props. Operating Co. v. City of Austin*, 22 S.W.3d 868, 872 (Tex. 2000); *WB Summit Props., Inc. v. Midland Cent. Appraisal Dist.*, 122 S.W.3d 374, 375 (Tex. App.--El Paso 2003, pet. denied). The reviewing court is to render

the judgment that the trial court should have rendered. *FM Props.*, 22 S.W.3d at 872; *WB Summit*, 122 S.W.3d at 375.

## 2. The City's Motions for Partial Summary Judgment

On April 23, 2003, the City filed its first motion for partial summary judgment. In it, the City argued that it was immune from liability, because Scown failed to comply with the notice of claim provision contained in the City's charter. The City attached the notice provision along with the affidavits of the city manager and city secretary, each of whom stated that no written, verified notice of the claim had been received from Scown. The trial court denied the motion.

The City filed a second motion for partial summary judgment on March 31, 2006. There, the City first argued that the Livingston Agreement violates the Texas constitutional provision that "no debt shall ever be created by any city, unless at the same time provision be made to assess and collect annually a sufficient sum to pay the interest thereon and creating a sinking fund of at least two per cent. thereon." TEX. CONST. art. XI, § 5.[1] The City contended that, according to Scown's interpretation of the Livingston Agreement, the City would be required to provide taps and connections to the City's water line, be responsible for all infrastructure, and be required to develop the water system sufficiently to ensure water delivery to the additional out-of-city residents who would live in the proposed Desert Spring Subdivision. According to the City, the Livingston Agreement was not supported by current revenue in 1972, and no sinking fund, interest fund, or other mechanism of payment had been set aside for the costs associated with it.

The City also argued that partial summary judgment was warranted, because the regulation of water and the decision as to whether to extend water services outside the corporate limits are legislative functions, and that the installation of forty additional water taps would impair the City's

---

[1] Cited in the City's motion as article II, section 5.

governmental power by forcing it to exercise an authority detrimental to the benefit of Alpine's citizens. As evidence, the City cited an Alpine City Council resolution limiting the expansion of city services beyond the city limits.

The City further argued that the Livingston Agreement was terminable at will. The City cited the reversionary language contained in the Livingston Agreement and requested a declaratory judgment that it had the right to abandon the pipeline located on the Scown (formerly, Livingston) property, build a new pipeline on Texas Department of Transportation right-of-way, and convey the easement back to Scown. The City also argued that the Livingston Agreement was terminable at will, because it was indefinite in time.

The City attached to its motion an affidavit of Chuy Garcia, Alpine's city manager in 2006, who stated that, in that capacity, he was familiar with the City's water distribution system. Garcia stated that the City received a request from Scown for forty new water taps to provide water to a proposed subdivision outside the city limits. Garcia referenced an engineering study attached to the Affidavit of Jose R. Rodriguez, the City's Consulting Engineer, which is, in turn, attached to the City's motion. Garcia stated that, based on the study, the additional demand equivalent to forty residential customers to the existing water line would result in a water pressure of approximately 24 psi, which is below the minimum required pressure pursuant to the Texas Commission on Environmental Quality's ("TCEQ") requirement of 35 psi. Garcia also stated that the City has water pressure problems within the City, which it is in the process of improving, and that the City does not have sufficient money to make such improvements and also improve water service and delivery to the Scown subdivision.

In his affidavit, Rodriguez stated that he is a licensed engineer in the State of Texas; that he was Project Engineer for Naismith Engineering, Inc.; and that he has fourteen years of experience

as engineer related to utility and public works improvement projects, including municipal water distribution systems. Rodriguez stated that he was familiar with the City's water distribution system and that he had evaluated the City's ability to provide water service for Scown's forty new taps. Through the use of a computer model, Rodriguez determined that the addition of the forty taps would result in a water pressure of approximately 24 psi, below the TCEQ required minimum pressure of 35 psi. Rodriguez also stated that, with certain improvements, entitled "Priority 1 Improvements," the water pressure could be brought up to 60 psi. Attached as an exhibit to Rodriguez's affidavit is a graph showing the water pressure with and without such improvements. Rodriguez attaches an estimate of the cost of such improvements, which places the cost at $4,860,000. Rodriguez states that the City cannot provide forty additional taps to the Scown property until the Priority 1 Improvements are made, because the City would be in violation of TCEQ water pressure regulations. Rodriguez further stated that the City and Naismith Engineering were then working on a project to remove the water line that crosses the Scown property, relocate it to a Texas Department of Transportation right-of-way, and deed the easement back to the Scown property. Rodriguez attached an exhibit estimating the cost for such project at $43,578.79.

On June 19, 2006, the trial court held a hearing on the City's motion for partial summary judgment, as well as that of Scown. Shortly thereafter, the City requested reconsideration of its first motion for partial summary judgment, based on its immunity defense, in light of the Supreme Court's decision in *Tooke v. City of Mexia*, 197 S.W.3d 325 (Tex. 2006), which was rendered on June 30, 2006.

The trial court granted the City's motion and denied Scown's. The trial court's order granting judgment in favor of the City recites that it found (1) that the Livingston Agreement is void,

because it violates article XI, section 7 of the Texas Constitution;[2] (2) that the Livingston Agreement impermissibly divests the City of its legislative function of regulating the provision of water; (3) that the Livingston Agreement is terminable at will and therefore of no further force and effect, should the City cancel it; and (4) that the City did "not waive its immunity from suit by reason of inclusion of the phrase 'sue or be sued' in its City Charter."

The trial court's entry of summary judgment declared, in part, that "as a matter of law, there is a reversionary clause granting Defendant, The City of Alpine, the option to abandon the easement, and to terminate any alleged duties under the contract."  The Livingston Agreement provides:

> Such easement shall be in perpetuity so long as Grantee uses the same for the purposes herein stipulated, and no other, and reversionary rights to the said easement shall be to Grantors herein, or to their heirs, administrators or assigns should the Grantee abandon or move said pipeline or otherwise cease to use the easement here granted for the purposes herein stated for a period of more than Three (3) years, unless sooner affirmatively abandoned after non-use by the Grantee.  In either event, the Grantee shall have Twelve (12) months thereafter to remove all pipe, pumps, boosters and other water transmission equipment from such easement and to repair and replace such easement in the condition the same now is.

Scown argues that the trial court's ruling is, in reality, a rescission of the Livingston Agreement. However, the Livingston Agreement expressly permits the City to abandon the easement.  *See Kearney & Son v. Fancher*, 401 S.W.2d 897, 906 (Tex. Civ. App.--Fort Worth 1966, writ ref'd n.r.e.) (an easement granted for particular purpose terminates as soon as such purpose ceases to exist or is abandoned).

---

[2] Article XI, section 7, which is largely analogous to section 5 (the constitutional provision relied upon by the City in its motion), provides, in relevant part:

> [N]o debt for any purpose shall ever be incurred in any manner by any city or county unless provision is made, at the time of creating the same, for levying and collecting a sufficient tax to pay the interest thereon and provide at least two per cent (2%) as a sinking fund . . . .

TEX. CONST. art. XI, § 7.  The two provisions are often cited and considered together.  *See*, *e.g.*, *City of Houston v. United Compost Servs., Inc.*, 477 S.W.2d 349, 356 (Tex. Civ. App.--Houston [1st Dist.] 1972, writ ref'd n.r.e.).  In view of our resolution of the underlying controversy, we need not consider the interplay of the two sections.

The Livingston Agreement does not require the City to continue to provide water service to Scown in the event the City abandons the easement. *See City of Livingston v. Wilson*, 310 S.W.2d 569 (Tex. Civ. App.--Beaumont 1958, writ ref'd n.r.e.) (absent an enforceable contract to supply water to nonresidents, city was under no obligation to do so); *Cox v. City of Comanche*, No. 11-97-00218-CV, 1998 WL 34193997, at *3 (Tex. App.--Eastland Nov. 12, 1998, no pet.) (not designated for publication) (city had right to abandon potentially contaminated waterline because warranty deed under which grantor claimed right to water did not require the city to maintain the line). Because the Livingston Agreement is terminable at will, we overrule this issue and affirm summary judgment on this ground. We therefore find it unnecessary to consider the other grounds relied upon by the trial court.

### 3. Scown's Motion for Partial Summary Judgment

Scown contends that the trial court erred by denying her motion for partial summary judgment. In her motion, Scown argued that there was no evidence "that the subject Contract is anything but a binding, valid and enforceable Contract requiring the City to provide water to Movant or her assigns as the legal beneficiaries to the subject Contract."[3] Scown argued that the City had "in essence breached the Contract with Movant by reason of their [sic] failure and unwillingness to provide water to portions of Movant's Property and to certify to Brewster County that the City will provide 8800 gallons per day for thirty (30) years to Movant's Property." Scown also asserted that the City breached the Livingston Agreement by allowing other entities access to the water line, "knowing it could potentially adversely affect future services to Movant's Property" and that "the City knew or should have known it was contractually obligated to Movant and her heirs and assigns,

---

[3] Although Scown filed a no-evidence motion for partial summary judgment, she attached several exhibits to the motion.

to provide water to the Property upon demand. The City's defense of alleged inadequate water pressure, or inadequate supply, if any, is the responsibility of the City to correct . . . ." According to Scown, the Livingston Agreement obligated the City to make any necessary improvements to provide the amount of water demanded by Scown.

Scown does not cite any authority for her position, but rather relies on the language of the Livingston Agreement, deposition excerpts, and other testimony. Scown cited portions of the deposition testimony of Karen Philippi, the former city manager, in an attempt to establish that the City was obligated to provide Scown with the water she requests. Scown cites to a portion of Philippi's deposition in which Philippi stated that she was not aware of language in the Livingston Agreement to the effect that the City did not have to continue to provide water, if it abandoned the easement. Scown's evidence showed that the City was providing water to other recipients outside of the City limits to whom it was not contractually obligated. For instance, Philippi testified that the City was providing water to a Department of Public Safety office and to a DEA office located outside the city limits and that she was unaware of a contract with either entity requiring the City to do so. Scown also presented some evidence to attack the reliability of the study commissioned by the City regarding the water pressure in the water line running on the easement and the effect of the additional taps demanded by Scown on the water pressure. However, the language of the Livingston Agreement simply does not support Scown's arguments that the City breached the Agreement by not agreeing in writing to provide 8800 gallons of water per day to Scown's property at city resident rates or by providing water to other entities located outside the City. As discussed above, the City is free to abandon the easement and terminate the Livingston Agreement. Scown's summary judgment evidence fails to overcome the plain language of the Livingston Agreement. We overrule this issue.

## III. CONCLUSION

We affirm the judgment of the trial court on the ground that the Livingston Agreement was terminable at will by the City.  Because we uphold the trial court's judgment on this ground, we do not address Appellant's remaining issues.

KENNETH R. CARR, Justice

November 13, 2008

Before Chew, C.J., McClure, and Carr, JJ.