# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-11-00317-CR

**Bennie Fuelberg, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE DISTRICT COURT OF BLANCO COUNTY, 424TH JUDICIAL DISTRICT
### NO. CR01015, HONORABLE DANIEL H. MILLS, JUDGE PRESIDING

## O P I N I O N

A jury found appellant Bennie Fuelberg guilty of misapplication of fiduciary property, theft, and money laundering. *See* Tex. Penal Code §§ 31.03, 32.45, 34.02. The jury assessed punishment at ten years' imprisonment for each offense, but recommended that the sentences be suspended and Fuelberg be placed on community supervision. In seven appellate issues, Fuelberg asserts that (1) the trial judge, the Honorable Daniel H. Mills, was disqualified from the case; (2) the assigned judge abused his discretion in failing to recuse Judge Mills; (3) the trial court abused its discretion in admitting testimony of two of the State's witnesses; and (4) the trial court erred in its determination of restitution. We will abate and remand this appeal.

## BACKGROUND

The Pedernales Electric Cooperative (PEC) is a member-owned utility that provides electrical service to twenty-four counties in Central Texas. *See* Tex. Util. Code §§ 161.001–.254

(describing formation and operation of utility cooperatives). Any resident in the PEC's service area is required to join the PEC in order to receive electric service, and as of 2008 the PEC had over 225,000 members. As a utility cooperative, the PEC operates on a non-profit basis, meaning that the rates, fees, and other charges paid by PEC members can be spent only on reasonable business expenses, and any excess revenue must be refunded to members. *See id.* § 161.059.

Fuelberg was the general manager of the PEC from 1976 until his retirement in February of 2008, and was given broad authority to oversee its day-to-day operations. The State alleged that between November 1996 and March 2007, Fuelberg conspired with Walter Demond to funnel over $200,000 in PEC funds through Demond's law firm to Fuelberg's brother and the son of a former PEC board member. The State charged Fuelberg and Demond with first-degree misapplication of fiduciary property and theft and second-degree money laundering. *See* Tex. Penal Code §§ 31.03, 32.45, 34.02.

Prior to trial, Fuelberg and Demond filed motions to disqualify or, alternatively, recuse Judge Mills from their respective cases. The motions asserted that as a PEC member, Judge Mills had a financial interest in the outcome of the trial and was a putative victim of the alleged offenses. Following a brief discussion with the parties, Judge Mills declined to voluntarily recuse himself and referred the motions to the presiding judge, who assigned the motions to the Honorable Bert Richardson. *See* Tex. R. Civ. P. 18a (prescribing procedure for resolving motions to disqualify and recuse).[1] Judge Richardson conducted a hearing after which he denied Fuelberg's

---

[1] Although Fuelberg and Demond were tried separately, they filed identical motions to disqualify and recuse Judge Mills, and Judge Richardson conducted a single hearing for both Fuelberg's and Demond's motions.

and Demond's motions. Fuelberg and Demond filed petitions for writ of mandamus, seeking orders from this Court directing Judge Richardson to reverse his rulings. This Court denied the mandamus petitions. *See In re Fuelberg*, No. 03-10-00027-CV, 2010 Tex. App. LEXIS 1256, at *2–4 (Tex. App.—Austin Feb. 19, 2010, orig. proceeding [leave denied]) (mem. op.).

After a nine-day trial, the jury found Fuelberg guilty of third-degree misapplication of fiduciary property, theft, and money-laundering, indicating that the value of the property misapplied, stolen, and laundered was between $20,000 and $100,000. *See* Tex. Penal Code §§ 31.03(e)(5), 32.45(c)(5), 34.02(e)(2). Following a punishment hearing, the jury assessed punishment at ten years' imprisonment for each offense, but recommended that the sentence be suspended and Fuelberg be placed on community supervision. The trial court rendered a judgment consistent with the jury's verdict, and also ordered Fuelberg to pay $126,000 in restitution. This appeal followed.

## DISCUSSION

Fuelberg raises seven issues on appeal, which we group into the following four complaints. First, Fuelberg asserts that Judge Mills was disqualified from presiding over his trial, and therefore his trial and conviction are void. Second, Fuelberg claims that Judge Richardson abused his discretion in failing to recuse Judge Mills from Fuelberg's trial. Third, Fuelberg argues that the trial court abused its discretion in admitting the testimony of two witnesses because their testimonies were hearsay and violated the confrontation clause. Finally, Fuelberg claims that the trial court erred in ordering restitution above the amount reflected in the jury's verdict. We will address Fuelberg's first two appellate issues in turn and need not reach his third and fourth issues, as explained below.

3

**Disqualification**

In his first issue on appeal, Fuelberg asserts that Judge Mills was disqualified from presiding over his trial. *See* Tex. Const. art. V, § 11. Specifically, Fuelberg claims that Judge Mills was disqualified because, as a PEC member, he (1) had a pecuniary interest in the subject matter in controversy and (2) had a personal interest in the case because he was putative victim of the alleged offenses. *See id.*; Tex. R. Civ. P. 18b(a)(1) (defining disqualifying financial interest);[2] Tex. Code Crim. Proc. art. 30.01 (defining "injured party" as disqualifying interest). According to Fuelberg, Judge Mills lacked authority to hear this case, and thus the underlying proceedings are void. *See Tesco Am., Inc. v. Strong Indus., Inc.*, 221 S.W.3d 550, 555 (Tex. 2006) (noting that if trial judge is disqualified, any orders or judgments issued by court are "void and without effect").

"Since Texas became a state in 1845, judicial disqualification has always been a matter of constitutional dimension." *Tesco Am., Inc.*, 221 S.W.3d at 551. The Texas Constitution provides that "[n]o judge shall sit in any case wherein the judge may be interested . . . ." Tex. Const. art. V, § 11. Rule 18b(a) of the Rules of Civil Procedure and article 30.01 of the Code of Criminal Procedure clarify when a judge is disqualified, but these statutes "*expound* rather than *expand* the Constitution." *Tesco Am., Inc.*, 221 S.W.3d at 553. Therefore, regardless of whether disqualification is discussed in terms of Rule 18b(a) or article 30.01, disqualification is a constitutional issue in this

---

[2] Although this is a criminal case, it is well established that the standards for disqualification and recusal of a trial judge provided for in the Rules of Civil Procedure are applicable in the criminal context "absent an explicit or implicit legislative intent indicating otherwise." *Gaal v. State*, 332 S.W.3d 448, 452–53 (Tex. Crim. App. 2011) (applying rule 18b of Rules of Civil Procedure to disqualification and recusal issue in criminal case) (internal quotations omitted). We cite to the current versions of the Rules of Civil Procedure for convenience because there have been no intervening amendments that are material to our disposition of this appeal.

case. *See id.*; *see also* Kilgarlin & Bruch, *Disqualification and Recusal of Judges*, 17 St. Mary's L.J. 599, 602 (1986) (discussing "constitutional statutory provisions" that embody article V, section 11 of Texas Constitution).

A disqualified judge may perform a ministerial act, but "is prohibited from performing any and all acts that call for the exercise of judicial discretion." *Koll v. State*, 157 S.W.2d 377, 379 (Tex. Crim. App. 1941) (concluding disqualified judge's order transferring venue was void). Thus any discretionary orders or judgments by a disqualified judge are void. *See Whitehead v. State*, 273 S.W.3d 285, 289 (Tex. Crim. App. 2008) (noting that if trial judge is disqualified under article 30.01 of Code of Criminal Procedure, conviction is nullity). Therefore, if Judge Mills was disqualified from Fuelberg's trial, Fuelberg's judgment of conviction and all of Judge Mills's discretionary rulings would be void and this case would be remanded for new proceedings.

*Standard of review*

Whether a judge is disqualified is a question of law that we generally review de novo. However, the State asserts that this Court's prior mandamus opinion—in which we rejected Fuelberg's disqualification and recusal issues—is the law of the case. *See In re Fuelberg*, 2010 Tex. App. LEXIS 1256, at *2–4; *see also Texas Parks & Wildlife Dep't v. Dearing*, 240 S.W.3d 330, 338 (Tex. App.—Austin 2007, pet. denied) (explaining law-of-the-case doctrine). "Under the law-of-the-case doctrine, a court of appeals is ordinarily bound by its initial decision on a question of law if there is a subsequent appeal in the same case." *Dearing*, 240 S.W.3d at 348. If a prior legal conclusion is the law of the case, that conclusion will not be disturbed unless it was "clearly erroneous." *Briscoe v. Goodmark Corp.*, 102 S.W.3d 714, 716 (Tex. 2003).

5

The law-of-the-case doctrine is prudential rather than statutory, and the decision to revisit a previous holding is generally left to the discretion of the court under the particular circumstances of a given case. *City of Houston v. Jackson*, 192 S.W.3d 764, 769 (Tex. 2006). When a court denies mandamus without any comment on the merits, the mandamus is not the law of the case. *Perry Homes v. Cull*, 258 S.W.3d 580, 586 (Tex. 2008). Some courts have held that the law-of-the-case doctrine may apply when the court's denial of mandamus addresses the merits. *See, e.g.*, *In re B.G.D.*, 351 S.W.3d 131, 141 (Tex. App.—Fort Worth 2011, no pet.). This Court has never extended the doctrine to a mandamus ruling. Without foreclosing the possibility of our doing so in the future, for purposes of this appeal we will not treat our previous denial of mandamus as law of the case, and we will address the disqualification issue de novo.

*Pecuniary interest*

Fuelberg asserts that Judge Mills was disqualified from this case, in part, because he had a pecuniary interest in the subject-matter in controversy. *See* Tex. R. Civ. P. 18b(a)(2). Specifically, Fuelberg claims that as a PEC Member, Judge Mills stood to potentially gain from any restitution he ordered. This issue was the primary focus of Fuelberg's disqualification motion, Judge Richardson's findings of fact and conclusions of law, and our opinion denying mandamus. *See In re Fuelberg*, 2010 Tex. App. LEXIS 1256, at *2–4. Furthermore, it presents an issue of first impression in this Court: Does a judge's participation in a member-owned utility cooperative disqualify him from hearing cases that might affect the cooperative financially? Under the facts of this case, we answer no.

6

"It is a settled principle of law that the interest which disqualifies a judge is that interest, however small, which rests upon a direct pecuniary or personal interest in the result of the case." *Cameron v. Greenhill*, 582 S.W.2d 775, 776 (Tex. 1979). Thus, if a judge has a direct financial interest in the outcome of the case, such as stock ownership in a company who is a party to litigation, the judge is disqualified. *See Williams v. City Nat'l Bank of Quanah*, 27 S.W. 147, 148 (Tex. Civ. App.—Fort Worth 1894, no writ) (concluding that ten shares in bank that was party to suit disqualified trial judge).

However, a judge's interest which is "merely indirect, incidental, remote, contingent, or possible" or based on his status as "a resident or taxpayer" in which he "will be no more affected by any decision which may be made in the case than every other citizen of the county who is a taxpayer" is not disqualifying. *Elliot v. Scott*, 25 S.W.2d 150, 152 (Tex. 1930). For this reason, a judge is not disqualified from hearing a case that may affect a public utility or regulated utility of which he is a customer. *See* Tex. R. Civ. P. 18b(d)(4)(E) ("[A]n interest as a taxpayer or utility ratepayer, *or any similar interest*, is not a 'financial interest' unless the outcome of the proceeding could substantially affect the liability of the judge . . . more than other judges.") (emphasis added); *Hidalgo Cnty. Water Imp. Dist. No. 2 v. Blalock*, 301 S.W.2d 593, 596 (Tex. 1957); *City of Houston v. Houston Lighting & Power Co.*, 530 S.W.2d 866, 868 (Tex. Civ. App.—Houston [14th Dist.] 1975, writ ref'd n.r.e.). Thus, it is the nature of the judge's financial interest, rather than its potential value, that determines whether the interest is disqualifying.[3]

---

[3] To the extent our prior mandamus opinion could be read to conclude that Judge Mills's financial interest was not disqualifying because it was de minimis, that conclusion would be incorrect. *See In re Fuelberg*, No. 03-10-00027-CV, 2010 Tex. App. LEXIS 1256, at *2–4 (Tex. App.—Austin Feb. 19, 2010, orig. proceeding [leave denied]) (mem. op.).

7

By statute, an electric cooperative like the PEC "shall operate *without profit* to its members." *See* Tex. Util. Code § 161.059(a) (emphasis added). The "rates, fees, rents, and other charges" for a co-op's services must be used to first pay for prudent business expenses, including the repayment of loans, and then to create reserves. *Id.* § 161.059(b)–(c). A utility cooperative "must periodically *return revenues* not required for those purposes to its members in proportion to that amount of business done with each member"—in the form of a cash payment, abatement of charges, or a general rate reduction—effectively reimbursing members for charges that they should not have paid. *See id.* § 161.059(d) (emphasis added).

This statutory framework is consistent with the testimony of the PEC's Chief Financial Officer, Michael Vollmer, at the disqualification and recusal hearing concerning how the PEC calculates reimbursements to its members. Vollmer explained that excess funds, which he called "margins," are calculated annually and then allocated to each member's "capital credit account" based on the "relative amount of electricity that [the member] purchased during the previous year." From there, the PEC board of directors can "distribute" portions of each member's capital credit account to the member. Vollmer emphasized that margins should not be called profits and distributions should not be called dividends, indicating that they are distinguishable, at least from an accounting standpoint.

At the time of the recusal hearing, Judge Mills had approximately $1,200 in his PEC capital credit account. Judge Mills did not receive a distribution from this account until 2007—27 years after he first became a PEC member—and that distribution was for approximately $18. Vollmer's testimony indicated that the PEC would be making more distributions in the near future.

8

Furthermore, Vollmer testified that any restitution that was ordered in this case could increase the PEC's margin, thereby increasing the amount allocated to each member's capital credit account for that year, which in turn could lead to a larger distribution in the future.

Fuelberg asserts that the potential distribution that Judge Mills could receive from ordering restitution is a direct, disqualifying pecuniary interest. Fuelberg relies primarily on *Pahl v. Whitt*, 304 S.W.2d 250, 252 (Tex. Civ. App.—El Paso 1957, no writ), which appears to be the only Texas case that directly addresses whether a judge's membership in a utility cooperative is disqualifying. The court in *Pahl* concluded that the interest was disqualifying because "if a Cooperative makes money, its members may receive dividends in the form of money or lowered rates for electricity, thus such members are in very much the same situation as stockholders in a corporation." *Id.* To the extent *Pahl* can be read to mean that distributions by all utility cooperatives are like dividends from a private corporation, we respectfully disagree. *See* 304 S.W.2d at 252. Each case must be reviewed on its own facts with regard to the character of the cooperative's distributions to its members.

Given the statutory framework and real-world application at PEC, as outlined above, the PEC's distributions to its members—whether in the form of cash distributions or reductions in future rates—function as a refund to members for previous overcharges. PEC members' capital credit accounts operate as an accounting tool to keep track of these overcharges and in no way equate to an ownership interest in the PEC. Therefore, the distributions from the capital credit accounts are more akin to a tax rebate or rate reduction than a dividend paid based on a company's profits. This interpretation is consistent with section 161.059(a) of the Utility Code, which specifically requires

9

that an electric cooperative must operate "without profit to its members."  Given that Judge Mills automatically became a member of the PEC when he purchased his home and electrical service, his interest in obtaining lower electricity rates from the PEC in these ways is indistinguishable from that of a judge who is a customer of a public or regulated utility.[4]  *See* Tex. R. Civ. P. 18b(d)(4)(E); *Hidalgo Cnty.*, 301 S.W.2d at 596; *City of Houston*, 530 S.W.2d at 868.

The record indicates that Judge Mills has no other financial interest in the PEC. Although PEC members are technically owners, their ownership is nontransferable—even to subsequent property owners—and terminates upon their withdrawal or death.  Vollmer testified that if the PEC dissolved, members could be entitled to the amounts in their capital credit accounts, but there is no indication that they would be entitled to any other distribution.  Therefore, the only financial interest that Judge Mills has in the PEC is in the rates that he pays, or should have paid, for utility service, which is indistinguishable from the interest of a public utility customer.  *See* Tex. R. Civ. P. 18b(d)(4)(E).

Finally, as the State correctly notes, this is a criminal proceeding, and neither the PEC nor its members are actually parties to this case.  Therefore, Judge Mills's potential financial interest

---

[4]  Fuelberg also asserts that Judge Mills's interest in the PEC is equivalent to that of a policyholder of a mutual insurance company, which has been held to be disqualifying. *See Sovereign Camp v. Hale*, 120 S.W.539, 540 (Tex. 1909); *New York Life Ins. Co. v. Sides*, 46 Tex. Civ. App. 246, 247 (Tex. 1907).  However, the judges in *Hale* and *Sides* had a pecuniary interest in those cases not because they technically owned a portion of the insurance company, but because any financial harm to the insurance company would have endangered the pay-outs of their individual life insurance policies.  *See Sovereign Camp*, 120 S.W. at 540; *New York Life Ins. Co.*, 46 Tex. Civ. App. at 247; *see also* Tex. R. Civ. P. 18b(d)(4)(C) ("[T]he proprietary interest of a policyholder in a mutual insurance company . . . is a 'financial interest' in the organization only if the outcome of the proceeding could substantially affect the value of the interest.").  Thus, the judges' pecuniary interest in the mutual insurance cases are distinguishable from Judge Mills's interest in this case because Judge Mills does not have a distinct future payout that could be endangered by his decision.

is even more attenuated than it would be in a civil case because he stood to gain only if Fuelberg was convicted; Judge Mills, in his discretion, ordered Fuelberg to pay restitution; the PEC increased the allocations to its members' capital credit accounts based on that restitution; and then the PEC Board, in its discretion, approved a distribution to its members from the increase in their capital credit accounts. We have not found any Texas cases that address whether a trial judge's potential benefit from criminal restitution can be disqualifying, and the federal cases on the issue are split.[5] *See United States v. Rogers*, 119 F.3d 1377, 1383 (9th Cir. 1997) (noting circuit split).

Furthermore, those federal courts which have found that this type of interest can be disqualifying noted that only a judge with a "substantial interest" in the corporate victim of the crime should disqualify himself. *See United States v. Nobel*, 696 F.2d 231, 234–35 (3d Cir. 1982). The court in *Nobel* explained that a judge who owned stock in the "corporate victim of the crimes does not have a 'financial interest in the subject matter in controversy,'" but for sake of appearance may nonetheless be required to be disqualified. *See id.* Given that the Texas rules governing financial interests do not require disqualification for the sake of appearances, the federal court's reasoning in *Nobel* appears to be more in line with Texas's recusal standards, and thus has little if any applicability to disqualification under Texas law. *See supra* n.5. In addition, although the court in *Nobel* did not define what "substantial interest" means, there is nothing in the record that could

---

[5] The federal rule for disqualification "includes disqualification for the appearance of impropriety," which is addressed in the Texas rules for recusal. *In re Wilhite*, 298 S.W.3d 754, 760–61 (Tex. App.—Houston [1st Dist.] 2009, orig. proceeding [mand. denied]). "Because federal cases discussing recusal and disqualification often use the terms interchangeably, those cases are of limited guidance in interpreting Texas's rule for disqualification that does not include the appearance of impropriety as a basis for disqualification." *Id.*

11

arguably support a claim that Judge Mills has a substantial financial interest in either the PEC or the outcome of this case. *See* 696 F.2d at 234–35 (concluding that judge's impartiality might reasonably be questioned when he owned between $10,000 and $15,000 in victim's corporate stock).

Therefore, we conclude that Judge Mills did not have a disqualifying pecuniary interest in the subject matter of this case. Judge Richardson did not err in denying Fuelberg's motion to disqualify Judge Mills on this basis. We overrule Fuelberg's first appellate issue with respect to Judge Mills's pecuniary interest in this case.

*Injured Party*

Fuelberg also asserts that Judge Mills was disqualified from this case as a putative victim of the offenses alleged. Specifically, Fuelberg claims that as a PEC member, Judge Mills was a "party injured" within the meaning of article 30.01 of the Code of Criminal Procedure. Therefore, according to Fuelberg, Judge Mills has a disqualifying personal interest in the subject matter at issue.

Article 30.01 states that "[n]o judge or justice of the peace shall sit in any case where he may be the party injured . . . ." The statute does not define who qualifies as "the injured party" in a criminal case, although it would presumably always include the victim named in the indictment. *See Ex parte Ambrose*, 24 S.W. 291, 291–92 (Tex. Crim. App. 1893) (concluding that county judge was disqualified from presiding over trial for assault where he was victim of alleged assault); *but see Lane v. State*, 634 S.W.2d 65, 66 (Tex. App.—Fort Worth 1982, no pet.) (concluding that "judge presiding at a trial in which perjury is committed does not thereby become an 'injured party'" in subsequent perjury trial). In this case, however, the PEC—not the PEC members generally nor Judge Mills specifically—is the victim named in the indictment.

12

Whether the judge was named as the victim in the indictment, however, does not necessarily end the inquiry. The court of criminal appeals recently addressed a similar case in which the trial judge was not named in the indictment but was nonetheless involved in the underlying offense. *See Whitehead v. State*, 273 S.W.3d 285, 286 (Tex. Crim. App. 2008). In that case, the judge was one of the people threatened in a letter written by the defendant that formed the basis for the State's motion to revoke the defendant's community supervision. *Id.* The court of criminal appeals rejected the intermediate court's conclusion that the judge was not an injured party merely because he was not named in the indictment, and held that he "may be the party injured, . . . if the evidence shows that he was among the defendant's victims in the criminal transaction or episode at issue, such that a reasonable person would harbor doubts as to the judge's impartiality."[6] *Id.* at 289 (internal quotations omitted). The court further held that a reasonable person would harbor doubts about the judge's impartiality in that case, and therefore the judge was disqualified. *See id.*

Given that Judge Mills is not the victim named in the indictment, he is an injured party, if at all, because he was a victim in the criminal transaction or episode at issue such that a reasonable person would doubt his impartiality. *See id.* Judge Richardson did not make findings

---

[6] The defendant in *Whitehead v. State* did not file a motion to recuse the trial judge, and thus the court of criminal appeals considered only whether the trial judge was disqualified. *See* 273 S.W.3d 285, 289 (Tex. Crim. App. 2008). Given that the rationale and standard established in *Whitehead* are identical to the rationale and standard for recusal under rule 18b(b)(1) of the Rules of Civil Procedure, it is possible that the interest addressed in *Whitehead* could more aptly be resolved under recusal law. *See id.* ("We have no doubt that [the trial judge's] integrity is of the highest and that he would have recused himself had a motion for recusal been filed."). Nevertheless, the court determined that the interest was disqualifying under article 30.01 of the Code of Criminal Procedure, and we are bound to conform our opinions to those of the court of criminal appeals. *See State v. DeLay*, 208 S.W.3d 603, 607 (Tex. App.—Austin 2006).

13

of fact or conclusions of law as to whether Judge Mills was an injured party within the meaning of article 30.01 or whether a reasonable person would doubt his impartiality.

As we will discuss below, we are abating this appeal and remanding this cause for a new hearing on the issue of whether Judge Mills should have been recused under rule 18b(b)(1) of the Rules of Civil Procedure. The objective reasonable-person standard for disqualification established in *Whitehead* is identical to the objective reasonable-person standard for recusal under rule 18b(b)(1). *Compare Whitehead*, 273 S.W.3d at 286, *with Ex parte Ellis*, 275 S.W.3d 109, 115–17 (Tex. App.—Austin 2008, no pet.) (describing objective reasonable-person standard for recusal under rule 18b(b)(1)). Therefore, we will also abate this appeal and remand this cause with instructions to determine whether Judge Mills is disqualified as an injured party under *Whitehead*. *See* 273 S.W.3d at 286; *see also Gamez v. State*, 644 S.W.2d 879, 880–81 (Tex. App.—San Antonio 1982, pet. ref'd) (abating case and remanding for factual determination of whether trial judge was disqualified under article 30.01).

**Recusal**

In his second issue on appeal, Fuelberg asserts that Judge Richardson erred in denying his motion to recuse Judge Mills. Specifically, Fuelberg argues that Judge Mills should have been recused because, given his financial interest in the PEC and his status as a victim of the offenses alleged, his "impartiality might reasonably be questioned."[7] *See* Tex. R. Civ. P. 18b(b)(1). Although

---

[7] Fuelberg also asserts that Judge Mills should have been recused because he had "a financial interest in the subject matter in controversy." *See* Tex. R. Civ. P. 18b(b)(6). However, Fuelberg did not raise this argument in his amended motion to recuse Judge Mills, nor did he assert it as a separate ground for recusal at the hearing before Judge Richardson. Therefore, Fuelberg has not preserved this issue for appeal. *See Blackwell v. Humble*, 241 S.W.3d 707, 713 (Tex. App.—Austin 2007,

14

these complaints mirror the arguments for disqualification discussed above, recusal is concerned not only with actual personal or pecuniary interests, but also the appearance of impartiality when all factors are reviewed as a whole. *See id.*; *Rogers v. Bradley*, 909 S.W.2d 872, 873 (Tex. 1995) ("Declaration of Recusal" by Gammage, J.) (noting that issue is one of perception). "[B]eyond the demand that a judge be impartial is the requirement that judge appear to be impartial so that no doubts or suspicions exist as to the fairness or integrity of the court." *Sears v. Olivarez*, 28 S.W.3d 611, 613–14 (Tex. App.—Corpus Christi 2000, no pet.). Thus, according to Fuelberg, even if Judge Mills's alleged interests in this case do not rise to the level of constitutional disqualification, those interests nevertheless cause his impartiality to be reasonably questioned.

In determining whether recusal is required, "the proper inquiry is whether a reasonable member of the public at large, knowing all the facts in the public domain concerning the judge and the case, would have a reasonable doubt that the judge is actually impartial." *Ex parte Ellis*, 275 S.W.3d at 115–17 (internal quotations omitted). Thus, unlike the subjective issue of whether Judge Mills has a personal or pecuniary interest in this case, recusal is determined from an objective standard, and asks whether a reasonable person would doubt that Judge Mills could remain impartial. *Id.* As discussed above, we will not treat our previous mandamus opinion as law of the case with respect to recusal. Therefore, we review Judge Richardson's ruling on Fuelberg's recusal motion for an abuse of discretion. *Wesbrook v. State*, 29 S.W.3d 103, 120 (Tex. Crim. App. 2000).

Judge Richardson issued an order denying Fuelberg's disqualification and recusal motions, in which he adopted the findings of fact and conclusions of law he previously announced

---

no pet.) (noting that party who fails to timely raise grounds for recusal waives right to complain about judge's failure to recuse).

during the disqualification and recusal hearing. At the hearing, Judge Richardson mostly focused

on the motion to disqualify and made only the following findings of fact and conclusions of law with

respect to recusal:

> The recusal issue is something completely different. They argue the recusal issue under the Code of Judicial Conduct and that Judge Mills could not be fair and impartial. And the only thing I have to rely on at this point is as to Cannon [sic] Four, which states the following: "A judge shall conduct all of the judge's extra-judicial activities so that they do not cast reasonable doubt on the judge's capacity to act impartially as a judge or interfere with the proper performance of judicial duty." I haven't found any cases directly on point that deal with this issue, although the defense relies on *Whitt*,[8] and I'll comment on that in just a minute.
>
> Specifically, Judge Mills stated in court during the first hearing when the motion to recuse and disqualify was first brought to his attention that he could be fair and impartial, that he had no recollection of ever having received any kind of check from PEC, and didn't feel like he needed to step aside. And so the Court is relying on that representation to resolve the recusal issue, and that is that he can be. The defense chose not to call him, so that is the only thing that is reflected in the record as to whether or not he could be fair and impartial so I'll rely on his representation that he can be.

Judge Richardson also issued a supplemental order, in which wrote that "neither side

chose to call Judge Mills as a witness. Therefore, the Court will rely upon the Judge's representations

in the record vis-a-vis his ability to be fair and impartial." Judge Richardson noted that Judge Mills

had received only one distribution for $18, and concluded "[t]hat amount hardly seems sufficient to

---

[8] The "*Whitt*" case Judge Richardson is referring to is *Pahl v. Whitt*, 304 S.W.2d 250, 252 (Tex. Civ. App.—El Paso 1957, no writ), the case discussed above concerning disqualification based on membership in an electric cooperative. Judge Richardson did not discuss *Whitt* in terms of recusal, and it appears that his brief reference to it during his discussion of recusal is not relevant.

create a bias that rises to the level of recusal or disqualification—especially in light of his statements to the contrary in the first hearing on the matter." These are Judge Richardson's only findings or comments with respect to Fuelberg's recusal motion.

At no point in his oral pronouncement, his original order, or his supplemental order did Judge Richardson reference the objective reasonable-person standard that applies to recusal. Judge Richardson's findings of fact and conclusions of law indicate that he applied a subjective standard to determine whether Judge Mills was in fact impartial, relying solely on Judge Mills's own subjective state of mind and beliefs concerning whether he could be fair and impartial. Instead, Judge Richardson should have determined whether a reasonable person would doubt Judge Mills's impartiality. Therefore, we conclude that Judge Richardson abused his discretion by applying the incorrect legal standard to Fuelberg's motion to recuse. *See State v. Herndon*, 215 S.W.3d 901, 907 (Tex. Crim. App. 2007) (noting that trial court abuses discretion when misapplies the law).

Based upon this conclusion, we now must decide the appropriate remedy. One of our sister court of appeals recently addressed a similar case in which a recusal court abused its discretion by "misapplying or misinterpreting recusal law." *See Kniatt v. State*, 239 S.W.3d 910, 919–920 (Tex. App.—Waco 2007, no pet.) (op. on reh'g). In that case, the appellate court noted that it had "not determined that the assigned judge abused his discretion in denying [the defendant's] recusal motion under a correct application of recusal law." *Id.* at 920. Therefore, the appellate court concluded that it should abate the appeal and remand the case for a new recusal hearing so that the court below could apply the correct recusal standard. *Id.* at 922 (citing several cases from other courts of appeals abating appeal for new recusal hearing). The court took this action even though the trial court had already rendered a judgment of conviction.

We have determined that this procedural approach is appropriate in this case. The record does not clearly establish as a matter of law that Judge Mills should or should not have been recused. Furthermore, Judge Richardson has not considered or determined whether a reasonable person would doubt Judge Mills's impartiality. Therefore, we will abate this appeal and remand the case for a new recusal hearing with instructions to apply the correct reasonable-person standard. Because we are abating this appeal and remanding this case for a new recusal hearing, we need not reach Fuelberg's remaining issues at this time. *See* Tex. R. App. P. 47.1 (requiring appellate courts to hand down opinions that are as brief as possible while addressing those issues necessary to final disposition of appeal)**.**

## CONCLUSION

We overrule Fuelberg's complaint that Judge Mills was disqualified based on his alleged pecuniary interest in the subject-matter of this case. We abate this appeal and remand this cause for a new hearing, with instructions to address whether, under an objective reasonable-person standard, Judge Mills (1) was disqualified as an interested party, *see Whitehead*, 273 S.W.3d at 286, or (2) should have been recused because his impartiality might reasonably be questioned, *see* Tex. R. Civ. P. 18b(b)(1).

The district court shall submit to this Court its findings and conclusions, along with a transcription of the hearing, in a supplemental clerk's record and reporter's record on or before October 28, 2013. At that time, we may request supplemental briefing from the parties as necessary.

18

_____

Scott K. Field, Justice

Before Chief Justice Jones, Justices Pemberton and Field

Abated

Filed:   August 27, 2013

Publish